Merrimack
No. 97-666

THOMAS H. HANNIGAN & a.

v.

CITY OF CONCORD

July 21, 1999

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*William J. Donovan* on the brief), and *Ropes & Gray*, of Boston, Massachusetts (*Thomas H. Hannigan, Jr.* on the brief and orally), for the plaintiffs.

*Paul F. Cavanaugh*, city solicitor, of Concord, for the defendant, filed no brief.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Jeffrey S. Cohen* and *Timothy A. Gudas* on the brief, and *Mr. Gudas* orally), for the intervenor, Concord Country Club.

BRODERICK, J. The plaintiffs, Thomas and Mary Hannigan and Russell Matthews, appeal an order of the Superior Court (*Smukler*, J.) affirming the decisions of the Concord Planning Board (planning board) and Zoning Board of Adjustment (ZBA) allowing the intervenor, Concord Country Club (club), to construct a golf course maintenance building and access way in residential districts abutting the plaintiffs' properties. On appeal, the plaintiffs argue that the trial court erred by: (1) ruling that a proposed maintenance building was a permitted accessory use; (2) affirming the grant of a special exception to construct an access way; (3) ruling that there was adequate frontage for the maintenance building and driveway; and (4) affirming the planning board's finding that Bowen Brook, a protected watercourse, did not flow over the proposed site. We affirm.

The club proposes to build an 8,000 square foot maintenance building for its golf course behind the plaintiffs' properties. Its proposed location is on the opposite side of a knoll approximately 280 feet from the nearest house. The club also seeks to build a driveway, approximately twenty feet wide, in a wooded area between the plaintiffs' properties for access to the building. The maintenance building will be located in the residential country (RD) district, which permits country clubs and golf courses as a matter of right. While some of the driveway will be in the RD district, it will be principally located in the residential suburban (RC) district, where golf courses are permitted solely by special exception.

In March 1996, the ZBA granted the club's application for a special exception to construct the driveway in the RC district and subsequently denied the plaintiffs' motion for a rehearing. In early April, the planning board conditionally approved the club's site plan for the maintenance building and driveway. The planning board later granted full approval. On appeal, the superior court affirmed the ZBA's decision, reasoning that the club had presented sufficient evidence to satisfy the criteria for a special exception. With respect to the planning board's decision, the court concluded that the proposed maintenance building constituted a permitted accessory use to a golf course and upheld the board's determinations on frontage compliance and the location of Bowen Brook. The court

denied the plaintiffs' motion for reconsideration, and this appeal followed.

The question for our review is whether the superior court correctly upheld the decisions of the planning board and ZBA approving the club's proposal. The superior court was obligated to treat the factual findings of both boards as *prima facie* lawful and reasonable and could not set aside their decisions absent unreasonableness or an identified error of law. *Deer Leap Assocs. v. Town of Windham*, 136 N.H. 555, 557, 618 A.2d 837, 838 (1992) (planning board); *Dube v. Town of Hudson*, 140 N.H. 135, 137, 663 A.2d 626, 628 (1995) (ZBA); *see* RSA 677:6, :15, V (1996). We will uphold the superior court's decision unless it is unsupported by the evidence or is legally erroneous. *Cormier v. Town of Danville*, 142 N.H. 775, 777, 710 A.2d 401, 403 (1998).

I

We first address the plaintiffs' argument that the superior court erred in affirming the planning board's decision that the proposed maintenance building is a permitted accessory use to a golf course under the Concord Zoning Ordinance (ordinance). The plaintiffs contend that the court's ruling is contrary to the language and structure of the ordinance.

■ The interpretation of a zoning ordinance and the determination of whether a particular use is an accessory use are questions of law for this court to decide. *See City of Concord v. New Testament Baptist Church*, 118 N.H. 56, 58, 382 A.2d 377, 379 (1978) (ordinance); *Gratton v. Pellegrino*, 115 N.H. 619, 621, 348 A.2d 349, 351 (1975) (accessory use). The ordinance at issue provides, "No building shall be erected or used and no land . . . used or subdivided except in conformance with this Zoning Ordinance. All other uses of land or . . . buildings are hereby expressly prohibited . . . ." CONCORD, N.H., ZONING ORDINANCE art. 28-1-1 (1994). This language makes it clear that the ordinance is "permissive," that is, it "prohibit[s] uses of land unless they are expressly permitted as primary uses or can be found to be accessory to a permitted use." *Town of Windham v. Alfond*, 129 N.H. 24, 27, 523 A.2d 42, 43-44 (1986).

The ordinance expressly permits country clubs and golf courses as a matter of right in the RD district, which includes the site of the club's proposed maintenance building. The ordinance does not specifically permit or prohibit a golf course maintenance building. It does, however, provide the following definition for an "Accessory

Use or Structure": "A use or structure on the same lot with, and of a nature incidental and subordinate to, the principal use or structure." CONCORD, N.H., ZONING ORDINANCE art. 28-2-1 (1994). In concluding that the proposed maintenance building qualifies as an "accessory use," the superior court determined that the club's proposed maintenance building was "incidental and subordinate" to the operation of the golf course. The court also found that, as a result of the consolidation of the club's properties, the maintenance building was to be built on the same lot as the golf course. We conclude that the court's ruling was supported by the record and was not legally erroneous.

The phrase "incidental and subordinate" requires that the accessory use be minor in relation to the permitted use and that it bear a reasonable relationship to the primary use. *Becker v. Town of Hampton Falls*, 117 N.H. 437, 440, 374 A.2d 653, 655 (1977). The proposed maintenance building will be used for the storage of lawn mowers, fertilizers, and other tools and supplies employed in the operation and upkeep of the golf course. It will occupy only a small portion of the club's property and is designed to serve the golf course. Moreover, the plaintiffs acknowledge that the maintenance building will house "golf course maintenance equipment" and fertilizers and other supplies "used in golf course maintenance." It is apparent, therefore, that the maintenance building bears a reasonable relationship to the golf course.

The plaintiffs argue that the ordinance permits only the specific accessory uses listed in its "Table of Uses." Their argument, however, misapplies the doctrine of accessory uses and miscasts the ordinance. "The rule of accessory use is a response to the impossibility of providing expressly by zoning ordinance for every possible lawful use." *Town of Salem v. Durrett*, 125 N.H. 29, 32, 480 A.2d 9, 10 (1984). Accordingly, the rule of accessory uses recognizes that owners may employ land in ways an ordinance does not expressly permit. *Treisman v. Town of Bedford*, 132 N.H. 54, 59, 563 A.2d 786, 789 (1989). An accessory use of property is, by definition, "one that is not expressly permitted by the ordinance itself." *Town of Windham*, 129 N.H. at 28, 523 A.2d at 45. The doctrine of accessory uses applies to all zoning ordinances, even those structured as permissive. *Id.* at 27-29, 523 A.2d at 43-45.

The plaintiffs' argument also overlooks the definition of "accessory use" in the ordinance. If, as the plaintiffs assert, the only permitted accessory uses are those specifically listed, then the ordinance's general definition of accessory use would be rendered superfluous. *See State v. P. T. & L. Const. Co., Inc.*, 389 A.2d 448, 451

(N.J. 1978) (holding that introductory definition of accessory use would be rendered "mere surplusage" if list of accessory uses were deemed exclusive); *see also Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984) (legislature presumed not to have used superfluous or redundant words). Thus, we agree with the club that the table of uses "was intended only to provide examples of valid accessory uses for ease of administration of the ordinance." *P. T. & L. Const. Co., Inc.*, 389 A.2d at 451. "Otherwise any number of other uses, unquestionably incident to the main use as a matter of custom or convenience, would automatically be disqualified." *Id.* Further, a review of the ordinance reveals that the listing of specific accessory uses is essentially limited to those different in kind from the permitted primary use, such as a child care agency in a private residence or a heliport associated with a hospital or nursing home. *Cf. Hancock v. Concord*, 111 N.H. 413, 414, 285 A.2d 791, 792 (1971) (real estate business not accessory use to private residence because it involves work outside the home).

Although the plaintiffs argue in their brief that the proposed maintenance building fails to meet the common law test for an accessory use, they concede in their notice of appeal that this test does not apply in the present case. Therefore, we need not address this argument further.

Finally, the plaintiffs' characterization of the proposed maintenance building as a commercial or industrial operation overlooks its intended function. Unlike a gasoline filling station or an automobile dealership, the proposed maintenance building will not offer commercial services to the general public. Rather, it will be used solely for the storage of tools, equipment, and other supplies employed in the operation and upkeep of the golf course. *Cf. Narbonne v. Town of Rye*, 130 N.H. 70, 73-74, 534 A.2d 388, 390 (1987) (commercial enterprise, if intended to be allowed in residential district, should be specifically provided for in ordinance).

■ Accordingly, we affirm the superior court's ruling permitting the proposed maintenance building as an accessory use under the ordinance.

## II

We next consider whether the superior court erred in affirming the ZBA's decision to grant a special exception to the club to construct a driveway between the plaintiffs' properties to. allow access to the maintenance building.

As a preliminary matter, the club argues that it was not required to apply for a special exception for the driveway. The plaintiffs

assert that this argument was not preserved for appellate review. We agree. The club voluntarily filed an application for a special exception with the ZBA, did not challenge the position of the code enforcement department requiring a special exception, and did not appeal the decisions of the ZBA or the planning board concerning the special exception. Accordingly, this argument is deemed waived. *Cf. State v. Charpentier*, 126 N.H. 56, 62, 489 A.2d 594, 599 (1985) (waiver may be implied from conduct of parties).

The plaintiffs argue that the club failed to present sufficient evidence to meet the criteria for a special exception. The ordinance mandates that the following criteria be satisfied: (1) the site is an appropriate location for the use or structure; (2) the use will be compatible with neighboring land uses; (3) the use will not create a nuisance or hazard; (4) the use will not be detrimental to pedestrian and vehicular traffic movement in the neighborhood; (5) adequate and proper facilities will be provided to ensure the proper operation of the use; and (6) the use is compatible with the intent of the zoning ordinance. CONCORD, N.H., ZONING ORDINANCE art. 28-16-1 (1994); *see* RSA 674:33, IV (1996). We conclude that the club presented sufficient evidence to satisfy each of these conditions.

First, the club asserted that the site was an appropriate one for a driveway because its relatively flat topography provided suitable stopping places and good sighting distances in both directions. Second, the club noted that the use of the land for a driveway would be compatible with neighboring uses. It also emphasized that the golf course has existed for over sixty-five years, and that the entire area was developed with the golf course as a neighbor. The club also claimed that the proposed driveway would appear to "head off into the woods," and would therefore be in harmony with other drive-ways in the area. Moreover, no signs or lights were planned as part of its construction.

As to the third and fourth requirements, the club took the position that the driveway would not create a nuisance or hazard and would not be detrimental to existing vehicular or pedestrian traffic. The club emphasized that, as a result of the site's topography, the driveway would not present a danger to traffic on the intersecting main road. It also noted that the driveway would not create any additional traffic on the main road because the same traffic already passes by it en route to the present maintenance building. Although the driveway would create new traffic between the plaintiffs' properties, the club asserted that this would be quite limited, and that the equipment employed in the operation and upkeep of the golf course would never use the driveway. Further, the club noted that

pedestrian traffic in the area is minimal, and that construction of the driveway might serve to increase safety by clearing away obstructions.

Concerning the fifth requirement, the club agreed that it would satisfy all municipal mandates pertaining to the driveway. Finally, the club argued that the proposed driveway would be compatible with the intent of the zoning ordinance. It asserted that the driveway would provide a benefit to the club's golf course, which in turn would provide a benefit to all of the properties in the neighborhood. Moreover, the club claimed that the driveway would provide a "safe" and "aesthetic" access route to the maintenance building, and thus have minimal impact on adjacent properties.

■ The plaintiffs contend that the club failed to produce sufficient evidence to support a special exception because no witnesses were called, and the club relied solely on the testimony of its attorney. Relying on *Hanrahan v. City of Portsmouth*, 119 N.H. 944, 948, 409 A.2d 1336, 1339 (1979), they argue that unsubstantiated assertions by counsel are insufficient as a matter of law to establish entitlement to a special exception. The plaintiffs' reliance on *Hanrahan*, however, is misplaced. In *Hanrahan*, we held that the historic district commission improperly granted an application for a demolition permit because it was supported by nothing more than counsel's unsubstantiated assertions that did not even address the applicable criteria. *See id.* One of the criteria, for example, was "[t]he historical or architectural value of the building or structure(s) and its setting." *Id.* at 946, 409 A.2d at 1338. The applicant's attorney, however, merely "touched upon the building's condition and offered his view that neither the building in question nor the buildings surrounding it had 'any great historic value.'" *Id.* at 948, 409 A.2d at 1339. His conclusory statement did not provide any information by which the commission could assess the historical and architectural value of the building involved, and therefore we concluded that the commission did not have sufficient information upon which to base its findings. *See id.* Here, by contrast, the club's attorney offered specific evidence on each criterion. We disagree with the plaintiffs that "experts or witnesses with first hand knowledge [should have been] called to address such issues as whether the use would be compatible with neighboring land uses, or whether there would be any nuisance or hazard." The determination of these issues was within the board's competence. For example, one member of the ZBA reasoned that the proposed twenty-foot driveway was compatible with neighboring land uses because it was only

"a little wider than a residential driveway," which is usually fifteen feet wide. *Cf. Petition of Grimm*, 138 N.H. 42, 55, 635 A.2d 456, 465 (1993) (medical board did not need expert testimony to determine whether doctor's conduct fell below professional standard of care).

■ We are also unpersuaded by the plaintiffs' argument that the effect on neighboring property values is a criterion for denying a special exception under the ordinance. Unlike the zoning ordinance in *Barrington East Cluster I Unit Owners' Association v. Town of Barrington*, 121 N.H. 627, 630, 433 A.2d 1266, 1267-68 (1981), the Concord Zoning Ordinance does not identify effect on neighboring property values as a factor to be considered. Thus, the ZBA did not err in refusing to consider it. *See New London Land Use Assoc. v. New London Zoning Board*, 130 N.H. 510, 517-18, 543 A.2d 1385, 1388 (1988) (ZBA "may not vary . . . any of the requirements as set forth within the zoning ordinance"). Moreover, the plaintiffs' evidence that the proposed building would affect property values is not relevant because the building was not part of the special exception process.

Accordingly, the superior court properly concluded that all requirements for a special exception under the ordinance had been satisfied.

### III

We turn next to the plaintiffs' argument that the superior court erred in ruling that there was adequate frontage for the proposed maintenance building and driveway.

The ordinance requires lots to have a minimum frontage of 100 feet in an RC district and 200 feet in an RD district. While most of the driveway will be located in the RC district, the remainder of the driveway and the maintenance building will lie in the RD district. Because the driveway is for access to a building to be constructed in the RD district, 200 feet of frontage is required.

According to the ordinance, frontage is determined by "a continuous line between side lot lines measured along the edge of highway or street right-of-way." CONCORD, N.H., ZONING ORDINANCE art. 28-2-1 (1994). It is undisputed that the club's property over which the driveway will be constructed has only 100 feet of frontage at its point of intersection with the main road. The ZBA, however, required that the nine-acre parcel, the proposed site of the maintenance building and driveway, be consolidated with the club's 123-acre golf course, so that the club's property would have continuous frontage of well over 200 feet on the main road. The

superior court, which viewed the site, ruled that the club satisfied the dimensional requirements of the zoning ordinance.

The plaintiffs argue that the superior court ignored the ordinance's definition of frontage by considering the club's consolidated property. We disagree. Although the strip of land where the driveway is to be located is only 100 feet wide, the club has well over 200 feet of continuous frontage along the main road. There is no condition in the ordinance that the access point be located at the point of the claimed frontage. *See Belluscio v. Town of Westmoreland*, 139 N.H. 55, 56, 648 A.2d 211, 212 (1994) ("access" not synonymous with "frontage").

Moreover, we disagree with the plaintiffs that RSA 674:41 (1996) compels a different result. The statute provides that "no building shall be erected on any lot . . . nor shall a building permit be issued . . . unless the street giving access to the lot" meets certain requirements. RSA 674:41, I. The statute defines "the street giving access to the lot" as "a street or way abutting the lot and upon which the lot has frontage." RSA 674:41, III. The statute is inapposite because its purpose is to ensure access to the lot from an adequate roadway. The plaintiffs do not contend that the main road abutting the club's property fails to meet any of the statutory requirements.

Further, we disagree with the plaintiffs that the court's focus on the club's consolidated property overlooks the policy behind frontage requirements. Such requirements are usually justified "on the basis that they are a method of determining lot size to prevent overcrowding." *Metzger v. Town of Brentwood*, 117 N.H. 497, 502, 374 A.2d 954, 957 (1977). They may also reflect a need for safe access by fire trucks, police cars, and other emergency vehicles. *See id.* The plaintiffs do not suggest that neighboring the 132-acre golf course amounts to overcrowding. Moreover, the driveway does not need to be 200 feet wide to accommodate emergency vehicles. *See id.* (200-foot frontage requirement does not have substantial relationship to safe access by emergency vehicles because significantly narrower strip would serve that purpose). In fact, the fire department approved the driveway when it reviewed the club's site plan.

Accordingly, the superior court properly determined that the club's site plan complied with the frontage requirements of the zoning ordinance.

IV

Finally, we address the plaintiffs' argument that the superior court erred in affirming the planning board's finding that Bowen

Brook, a protected watercourse, did not flow over the proposed site for the maintenance building.

The ordinance establishes a Streambank and Shoreline District that is superimposed on the ordinance's general zoning districts. Bowen Brook is one of the watercourses to which the Streambank and Shoreline District applies. Although the plaintiffs argued to the planning board that the club's property included Bowen Brook and therefore fell within the Streambank and Shoreline District, the board disagreed. Based on our review of the record, we conclude that its determination was supported by the evidence.

A representative of the city's planning department reported to the board that his staff had examined the issue and concluded that a brook on the club's property was not Bowen Brook. The planning department submitted for the board's review historical and current maps of Concord, all of which depicted Bowen Brook as being south of the club's property. In support of their position, the plaintiffs presented the list of abutters accompanying a 1990 study by the Concord Conservation Commission, which listed the former owner of the parcel at issue as an abutter to Bowen Brook. The study generally described Bowen Brook as originating "in a forested area south of the Concord Country Club" and did not state which portions of listed property abutted Bowen Brook. In addition, the two maps cited in the study are consistent with the maps consulted by the planning department staff. Moreover, the department representative reported to the board that his staff did not agree with the study's apparent assumption that the parcel in question abutted Bowen Brook. While the plaintiffs presented a pamphlet on the history of East Concord, it generally described Bowen Brook as "flow[ing] southwesterly from swamp or spring . . . near Concord Country Club." Finally, the superior court viewed the proposed site before making its determination. *See Husnander v. Town of Barnstead*, 139 N.H. 476, 478-79, 660 A.2d 477, 478 (1995) ("findings of the trial court are within its sound discretion, particularly when a view has been taken").

Accordingly, we affirm the superior court's ruling that the club's property did not include Bowen Brook.

We have reviewed the plaintiffs' remaining arguments and find them to be without merit, warranting no further discussion. *Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.