Carroll
No. 99-296

KSC REALTY TRUST & a.

v.

TOWN OF FREEDOM

April 9, 2001

*William Foord*, by brief and orally, *pro se.*

*Gardner & Fulton*, of Lebanon (*H. Bernard Waugh, Jr.* on the brief and orally), for the defendant.

NADEAU, J. The plaintiffs, William Foord, Carol Foord and the KSC Realty Trust, appeal an order of the Superior Court (*O'Neill, J.*) affirming the decision of the Town of Freedom Zoning Board of Adjustment (ZBA) prohibiting the plaintiffs from using their land to sell water. We reverse.

The relevant facts follow. The plaintiffs purchased approximately 170 acres in the Rural Residential Zone of the town of Freedom in 1976. The land contains spring canals that release acquified water from underground. From 1976 to 1983, the plaintiffs used the canals only for residential use on the property. In April 1987, Mr. Foord entered into a five-year contract to sell water from the land to Roger

Villeneuve. During the summers between 1987 and 1989, the plaintiffs also transported three shipments of water weekly, via 2,000 gallon trucks, from their property to a nearby campground, which they owned.

In 1993, the plaintiffs made substantial improvements to the canals, including upgrading two spring houses and five chamber fields, which allowed water to be pumped into two 12,000 gallon steel storage tanks. In 1995, Mr. Foord entered into a ten-year contract with Great Spring Waters of America, Inc. Under this contract, Mr. Foord guaranteed to supply Great Spring Waters with a minimum of twelve million gallons of water per year; the contract provided no maximum. The water was transported from the plaintiffs' property in 6,500 or 8,500 gallon tanker trucks, which arrived and departed an average of 4.2 times per day, disrupting abutters.

On October 6, 1987, the defendant, the Town of Freedom (town) adopted an ordinance that classified the plaintiffs' property as Rural Residential (RR). *See* ZONING ORDINANCE OF THE TOWN OF FREEDOM, N.H. § 304 (1987). Section 304.3 specifically permits, among other uses, "Water Recreation and Storage Facilities" and any uses accessory to a permitted use.

On August 26, 1996, the Town of Freedom Board of Selectmen (board) informed the plaintiffs that the "sale of water constitutes a use that is neither permitted nor allowed by special exception in the RR District and is therefore a violation of the Zoning Ordinance." The plaintiffs appealed this decision to the ZBA. The ZBA upheld the board's decision, reasoning that the sale of water is not a permitted use within the ordinance's definition of "water recreation and storage facilities." The ZBA also found that the plaintiffs' use was neither a nonconforming commercial use nor a residential accessory use.

After an unsuccessful motion for reconsideration was filed, the plaintiffs appealed to the superior court. *See* RSA 677:3 (1996), :4 (Supp. 2000). Although the superior court affirmed the ZBA, it adopted a different analysis, ruling that the storage of water was a permitted use under the ordinance, but the sale and removal of the water were not permitted accessory uses.

The superior court is obligated to treat the factual findings of the ZBA as *prima facie* lawful and reasonable and may not set aside its decision absent unreasonableness or an error of law. *See Dube v. Town of Hudson*, 140 N.H. 135, 137 (1995); RSA 677:6 (1996). On appeal, "[w]e will uphold the superior court's decision unless it is unsupported by the evidence or is legally erroneous." *Hannigan v. City of Concord*, 144 N.H. 68, 70 (1999) (quotations omitted).

As a preliminary manner, we note that the plaintiffs' brief raises several issues that were either not raised in their motion for rehearing before the ZBA, or not raised in their notice of appeal to this court. We disregard these arguments. *See* RSA 677:3 (1996) (motion for rehearing); *State v. Martin*, 145 N.H. 313, 315 (2000) (notice of appeal).

 "The interpretation of a zoning ordinance and the determination of whether a particular use is an accessory use are questions of law for this court to decide." *Hannigan*, 144 N.H. at 70. The ordinance's structure is "permissive." We define "permissive" ordinances as those that "prohibit[] uses of land unless they are expressly permitted as primary uses or can be found to be accessory to a permitted use." *Id.* The doctrine of accessory uses applies to all zoning ordinances, even those structured as permissive. *See id.* An accessory use is not "the principal use of the property, but rather a use occasioned by the principal use and subordinate to it." *Nestor v. Town of Meredith*, 138 N.H. 632, 634 (1994).

The ordinance defines "Accessory Building or use" as "[a] building or use subordinate and customarily incidental to the main building or use on the same lot." ZONING ORDINANCE OF THE TOWN OF FREEDOM § 1702.1. The town submits that this definition is consistent with other zoning ordinances that we have interpreted. We agree. Further, the town does not dispute the superior court's conclusion that the storage component of the plaintiffs' operation is permissible. Rather, it argues that the sale and transport components are not accessory to that use, and therefore are not permitted. We disagree with this conclusion.

 The meaning of a zoning ordinance is determined from its construction as a whole, not by construing isolated words or phrases. *See Campbell Marine Const., Inc. v. Town of Gilford*, 132 N.H. 495, 496 (1989). As already noted, the town's zoning ordinance permits water recreation and storage facilities in the RR district. Section 901 of the ordinance provides that "[a]ny facility for the storage of water including . . . reservoirs, fish hatcheries, and sewer lagoons shall be allowed by the Board of Adjustment." Further, "Storage Facility" is defined synonymously with "Warehouse" to mean "[a] structure for the storage of merchandise or commodities." ZONING ORDINANCE OF THE TOWN OF FREEDOM § 1702.58.

 It is undisputed that the plaintiffs' water storage tanks are a permitted use under the ordinance. We must determine, therefore,

if the transport and sale components of the plaintiffs' operation are also permitted. The ordinance permits some specific commercial operations in this district, such as forestry and produce stands as well as water recreation and storage facilities. In addition, the ordinance permits uses accessory to these uses.

The scope of the permitted use of water storage facilities includes some commercial elements, including fish hatcheries and reservoirs. *See* ZONING ORDINANCE OF THE TOWN OF FREEDOM § 901. These examples contemplate both the sale of water and fish as well as their transport from the property. Further, the ordinance's definition of storage facility as a place for "commodities" and "merchandise" suggests a commercial element to the permitted use.

Water storage facilities, as defined by the ordinance, clearly have a commercial purpose. It makes little sense to permit a landowner to store water on the property, but prevent the landowner from transporting and selling it. The transport and sale of the water are necessarily incidental and subordinate to the permitted use of a water storage facility, and therefore accessory to it.

Briefly, we address the concerns raised by the dissenting opinion. The dissent concedes that "[t]he sale and distribution of spring water may well be an accessory use to a water storage facility," but nevertheless concludes that the magnitude of the distribution and sale operations are not "minor in relation to such a facility." Following this conclusion to its logical end, the dissent would punish the plaintiff because his water storage tanks were not large enough.

The dissent relies, chiefly, upon two cases: *Narbonne v. Town of Rye*, 130 N.H. 70 (1987), and *Perron v. Concord*, 102 N.H. 32 (1959). Both cases disallowed burgeoning businesses from being conducted in exclusively residential zones. *See Narbonne*, 130 N.H. at 71 (stained glass business in the home); *Perron*, 102 N.H. at 35-36 (roofing business in the home). It was integral to our analysis in those cases that the alleged "accessory use" was incidental and subordinate to the only permitted use, which was residential. We recognized that certain incremental commercial uses may be permitted within a residential zone so long as they remain related to or dependent upon the residence, and do not become an end in themselves. *See Narbonne*, 130 N.H. at 73; *Perron*, 102 N.H. at 36. Here, we look to a completely different permitted use, *i.e.*, water storage facilities, to determine if the distribution and sale is incidental and subordinate to that use. We conclude that it is.

*Reversed.*

DALIANIS, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; BRODERICK, J., with whom BROCK, C.J., joined, dissented.

BRODERICK, J., dissenting. Because our prior decisions involving accessory uses do not support such a conclusion, I disagree with the majority holding that the transport and sale of spring water, in this case, is "necessarily incidental and subordinate to the permitted use of a water storage facility."

The town's zoning ordinance defines accessory use as "[a use] subordinate and customarily incidental to the [use] on the same lot." ZONING ORDINANCE OF THE TOWN OF FREEDOM § 1702.1. We have historically interpreted the phrase "subordinate and customarily incidental" to require that the accessory use (1) be minor in relation to the permitted use and (2) bear a reasonable relationship to the primary use. See *Hannigan v. City of Concord*, 144 N.H. 68, 71 (1999); *Nestor v. Town of Meredith*, 138 N.H. 632, 634 (1994); *Narbonne v. Town of Rye*, 130 N.H. 70, 73 (1987); *Perron v. Concord*, 102 N.H. 32, 35-36 (1959).

In *Narbonne v. Town of Rye*, 130 N.H. 70, the plaintiffs argued that a stained glass business operating out of their home was an accessory use. Although the parties offered numerous arguments as to whether the business was customarily related to the primary use of the home, "we [found] it unnecessary to address this issue because the plaintiffs' business activity exceed[ed] the level of activity that might reasonably be considered to result from a subordinate use of the premises." *Id.* at 73. In essence, we found that the plaintiffs' business of selling stained glass was not minor or subordinate to the permitted residential use. The evidence revealed a substantial commercial operation "which, if intended to be allowed in the residential district, should be specifically provided for in the ordinance." *Id.* at 73-74.

The rationale of *Narbonne* is consistent with our earlier decision in *Perron v. Concord*, 102 N.H. 32. There, a roofer sought a permit to store tools, trucks and other equipment on his residential property. He also sought to use a portion of his home as an office for his roofing business. We upheld the denial of the permit to the extent that it pertained to uses of the residential property that were not accessory uses. In doing so, we stated that "uses which are not customarily incidental to residential uses, or which attain the proportions of a principal use, are not permissible as accessory." *Id.*

at 36 (quotation omitted). In the aggregate, the uses proposed by the roofer "extend[ed] beyond subordination to residential use. In volume and significance they might reasonably be considered at least equal to the permitted residential use to which they may lawfully be only accessory." *Id.* (quotation omitted). Accordingly, we sustained the board of adjustment's finding that the uses were not accessory. *See id.*

We recently applied the "subordinate and customarily incidental" accessory use test in *Hannigan v. City of Concord,* 144 N.H. 68, where we upheld the trial court's ruling that a proposed maintenance building was accessory to the permitted use of a golf course. *See id.* at 72. Because the building was intended for use in the operation and maintenance of the golf course, we rejected the plaintiffs' characterization that the proposed building was a commercial or industrial operation. *See id.* In doing so, we compared *Narbonne,* where the selling of stained glass from a residence was akin to a commercial enterprise. *See id.*

Contrary to the majority's rationale, whether the ordinance permits some commercial operations in the rural residential district is of no consequence. The fact that some commercial operations are expressly permitted is in accord with *Narbonne.* If a municipality intends to allow commercial uses in the residential district, they should be specifically provided for in the ordinance. *See Narbonne,* 130 N.H. at 73-74. Further, the majority's reliance upon the ordinance's definition of a "Storage Facility" as "[a] structure for the storage of merchandise or commodities" does not provide insight into whether the sale and distribution of spring water, under the circumstances of this case, is subordinate to or minor in relation to such a facility.

The sale and distribution of spring water may well be an accessory use to a water storage facility. Whether it is, however, should not rest solely upon the assertion that such facilities have a commercial purpose. Although this may help answer whether the sale and distribution of water is customarily incidental to the permitted use of a storage facility, it fails to address whether the use is subordinate or minor in relation to such a facility.

Here, the trial court found that the plaintiffs were under contract to remove and sell a minimum of twelve million gallons of water per year. The water was transported from the plaintiffs' property in 6,500 or 8,500 gallon tanker trucks which arrived and departed an average of 4.2 times per day, seven days a week, during all hours of

the day and night. As in *Narbonne*, it is unnecessary to determine whether the sale and distribution of water is customarily incidental to a storage facility "because the plaintiffs' business activity exceeds the level of activity that might reasonably be considered to result from a subordinate use of the premises." *Id.* at 73. In this case, the magnitude of the commercial enterprise cannot reasonably be declared subordinate to or minor in relation to the permitted use of water storage. Rather, both in volume and significance, it equals or exceeds the permitted use to which it must be accessory. *See Perron*, 102 N.H. at 36.

The plaintiffs are not without recourse. They could apply for an accessory use permit that would differ in degree, volume and significance from the current alleged accessory use. Obviously, such a permit should outline how the proposed use would truly be subordinate and incidental to the permitted use of a water storage facility. An application for such a permit would be entitled to consideration. *See id.* at 37-38. The plaintiffs could also seek a variance.

For the foregoing reasons, I respectfully dissent.

BROCK, C.J., joins in the dissent.