950 A.2d 157 (2008)
Robert E. NASER d/b/a Ren Realty
v.
TOWN OF DEERING ZONING BOARD OF ADJUSTMENT.
No. 2007-620.
Supreme Court of New Hampshire.
Argued: April 10, 2008.
Opinion Issued: May 22, 2008.
*158 Cronin & Bisson, P.C., of Manchester (John G. Cronin and Daniel D. Muller, Jr. on the brief, and Mr. Cronin orally), for the plaintiff.
Upton & Hatfield, LLP, of Concord (Matthew H. Upton and Matthew R. Serge on the brief, and Mr. Upton orally), for the defendant.
HICKS, J.
The plaintiff, Robert E. Naser d/b/a REN Realty, appeals an order of the Superior Court (Abramson, J.) upholding decisions of the defendant, the Town of Deering Zoning Board of Adjustment (ZBA), ruling that his subdivision application failed to comply with the town's zoning ordinance and denying his request for a variance. We affirm in part, reverse in part and remand.
The following facts were found by the trial court or are supported by the record. The plaintiff owns seventy-seven acres in Deering. In 1989, the previous owners received approval from the Town of Deering Planning Board (planning board) to develop the property by constructing twenty-five duplex buildings. Throughout the approval process, there were numerous discussions before the planning board about a conservation easement to be granted by the property owners to the Town of Deering (town). In 1990, the previous owners conveyed a conservation easement to the town over approximately fifty of the seventy-seven acres. The deed did not condition the grant of the easement upon the completion of the development or reserve a right of reverter to the grantors.
Improvements began on the property but the development was never completed and the property was conveyed to the plaintiff in 1994. In 2006, he submitted a subdivision application to the planning board for the development of fourteen single-family homes on the twenty-seven acres that were not subject to the conservation easement. The planning board declined to accept the application because it *159 failed to comply with section 13 of the Deering Zoning Ordinance (ordinance).
Section 13 regulates open space developments and permits an applicant to increase density by decreasing lot sizes provided a requisite amount of open space is preserved on the property. To determine the appropriate density, an applicant is required to submit a yield plan that shows "that the net density will be no greater than permitted within that zoning district for a conventional subdivision or development." Deering Zoning Ordinance § 13.5, b.
The plaintiff's yield plan included the fifty acres subject to the conservation easement in the density calculation, thereby allowing him to construct fourteen homes on twenty-seven acres. The planning board found that the inclusion of the fifty acres in the yield plan was improper and, therefore, the open space subdivision ordinance was not satisfied.
The plaintiff then submitted an application to the ZBA appealing the decision of the planning board and, in the alternative, requesting a variance from section 13 to allow him to use the conservation easement land in the yield plan. The ZBA denied both the appeal and the variance request. The plaintiff appealed to the superior court, which affirmed the decision of the ZBA, ruling that section 13 did not permit the plaintiff to use the conservation easement land in the yield plan and that he failed to satisfy at least two of the five criteria required for a variance.
The plaintiff appeals, arguing that the trial court erred in finding that: (1) the yield plan did not satisfy the requirements of section 13; (2) he failed to show that the variance was not contrary to the public interest and consistent with the spirit of the ordinance; and (3) there was insufficient evidence for the ZBA to determine that the previous owners' grant of the conservation easement to the town "was a quid pro quo transaction for Planning Board approval of the original condominium plan." We address each argument in turn.
I. Yield Plan
[T]he interpretation of an ordinance is a question of law, which we review de novo. Because the traditional rules of statutory construction generally govern our review, we construe the words and phrases of an ordinance according to the common and approved usage of the language. When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent, and we will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include.
Stankiewicz v. City of Manchester, 156 N.H. 587, 592, 938 A.2d 873 (2007) (citations omitted).
Section 13 establishes the requirements for an open space development. The intent of the section "is to enable the applicant to decrease lot sizes and leave the land `saved' by doing so as open space. . . ." Deering Zoning Ordinance § 13.4, a. "The total area of dedicated open space shall equal a percentage of 50% of the total buildable area." Id. § 13.5, f. "Buildable area" is defined as "[t]he area of a site that does not include slopes of 25% or more, submerged areas, utility right-of-ways, wetlands and their buffers." Id. § 13.7, a.
An applicant seeking to develop an open space subdivision must also comply with certain requirements, including, inter alia, submission of a valid yield plan, id. § 13.5, b, which is defined as "[a] plan submitted by the applicant showing a feasible conventional *160 subdivision under the requirements of the specific zoning district in which the property is located and the requirements of any and all State and local subdivision regulations." Id. § 13.7, d. The yield plan is used by the planning board to determine the appropriate density for the development. It must show "that the net density will be no greater than permitted within that zoning district for a conventional subdivision or development." Id. § 13.5, b. The ordinance further provides that "[t]he yield plan is meant to be conceptual in nature but must be realistic and not show potential house sites or streets in areas that would not ordinarily be legally permitted in a conventional layout." Id. § 13.5, b.(1)
The plaintiff makes several arguments regarding the interpretation of the yield plan. He argues that: (1) the express purpose of the yield plan is to establish "the allowable density on the lot," and "judging [the yield plan] based upon [the] general goals and objectives" of the open space subdivision form of development "renders the overall scheme inherently contradictory"; (2) for regulatory purposes, the "lot" necessarily includes the portion burdened by the existing conservation easement; and (3) the ordinance does not preclude the use of existing open space, or land burdened by a conservation easement, in satisfying open space requirements. In support of his last argument, the plaintiff points out that, under the terms of the ordinance, the open space preserved must equal fifty percent of the total "buildable area," id. § 13.5, f., and the definition of buildable area does not exclude land already subject to a conservation easement, id. § 13.7, a.
In his first argument, the plaintiff fails to point to an example of where the trial court judged the yield plan "based upon [the] general goals and objectives" of the open space subdivision form of development. However, even if the trial court had so judged the yield plan, the plaintiff fails to sufficiently develop this argument in his brief. He does not assert, for example, how the yield plan should be properly judged in light of the open space subdivision requirements. His argument is conclusory at best. Accordingly, we find no error.
The plaintiff's second and third arguments miss an important point. Even assuming, arguendo, that the conservation easement land can be included in the yield plan and considered as part of the entire lot for purposes of satisfying the fifty percent open space requirement, the yield plan submitted by the plaintiff does not satisfy the ordinance requirements for a yield plan. The language of section 13 is clear: a yield plan must show a "feasible conventional subdivision," id. § 13.7, d. (emphasis added), and "must be realistic and not show potential house sites or streets in areas that would not ordinarily be legally permitted in a conventional layout," id. § 13.5, b.(1) (emphasis added). The plaintiff's yield plan places lots within the conservation easement land. The restrictions of the conservation easement granted to the town, however, do not allow the land to be developed in this manner. The easement provides, inter alia, that: "The Property shall be maintained in perpetuity as open space"; "The Property shall not be subdivided"; and "No dwelling . . . shall be constructed, placed or introduced onto the Property." While we recognize that the yield plan is "conceptual," id. § 13.5, b.(1), the ordinance expressly requires that the yield plan be "realistic," id., and "feasible," id. § 13.7, d. We read this to require that the conventional subdivision shown on the yield plan could actually be developed in accordance with all applicable restrictions and regulations. *161 See id. § 13.5, b.(4) ("The yield plan shall comply with conventional subdivision standards and shall not require a variance or waiver from the existing ordinances or regulations in order to achieve the layout supporting the proposed density[.]"). Because the conservation easement land can never be developed as a part of a subdivision, locating lots on this land is not "realistic," id. § 13.5, b.(1), and does not depict a "feasible conventional subdivision," id. § 13.7, d.
Accordingly, it was not error for the trial court to affirm the ZBA's decision to uphold the planning board's finding that the yield plan did not satisfy section 13 of the ordinance.
II. Variance
The plaintiff requested a variance from section 13 to use the conservation easement land in the yield plan. He argues that the trial court erred in finding the he did not satisfy two of the five variance criteria.
An applicant seeking a variance must demonstrate that: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that a literal enforcement of the provisions of the ordinance will result in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; (4) substantial justice is done; and (5) granting the variance will not diminish the value of surrounding properties. Malachy Glen Assocs. v. Town of Chichester, 155 N.H. 102, 105, 920 A.2d 1192 (2007).
The ZBA found that the plaintiff failed to satisfy the first four criteria and denied the variance. The trial court focused only upon the public interest and the spirit of the ordinance criteria and, based upon its finding that the plaintiff failed to satisfy them, affirmed the ZBA's denial of the variance.
The superior court's review in zoning cases is limited. Factual findings of the ZBA are deemed prima facie lawful and reasonable and will not be set aside by the superior court absent errors of law, unless the court is persuaded by a balance of probabilities on the evidence before it that the ZBA decision is unreasonable. The party seeking to set aside the ZBA decision in the superior court bears the burden of proof. We, in turn, will uphold the superior court's decision unless it is not supported by the evidence or is legally erroneous.
Kalil v. Town of Dummer Zoning Bd. of Adjustment, 155 N.H. 307, 309, 922 A.2d 672 (2007) (citations omitted).
The requirement that the variance not be contrary to the public interest is related to the requirement that the variance be consistent with the spirit of the ordinance.
To be contrary to the public interest the variance must unduly, and in a marked degree conflict with the ordinance such that it violates the ordinance's basic zoning objectives.
Malachy Glen, 155 N.H. at 105, 920 A.2d 1192 (quotations, citation, ellipsis and brackets omitted).
The ZBA found that the plaintiff failed to show that granting the variance would not be contrary to the public interest. The Deering Master Plan and the stated purpose of Section 13 of the Ordinance make it plain that the Town of Deering has a strong interest in preserving open space and that granting the variance would unduly interfere with the Town's basic zoning objectives.
The trial court found the ZBA's decision to be reasonable and lawful. It found that "[t]he evidence before the ZBA demonstrated *162 that the [plaintiff] sought to substantially increase the density of a very small area," i.e., the unencumbered twenty-seven acres, and that "the [plaintiff's] proposal did not provide for any open space as part of the actual subdivision, instead relying upon the land that was already established as such." The court further found that "[t]o allow the [plaintiff] to calculate density utilizing land already encumbered by a conservation easement would be to ignore the very purpose of this Ordinance section, that is, to preserve open space that might otherwise be lost."
The objectives listed under section 13 include, inter alia: "to conserve agricultural and forestlands, habitat, water quality, and rural character that would likely be lost through conventional development approaches"; "[m]aintain the special elements of rural character of the town through the preservation of natural resources and open space"; "assuring the permanent preservation of open space"; and "[e]ncourage a less sprawling form of development, thus preserving Open Space as undeveloped land." Deering Zoning Ordinance § 13.2. To promote these objectives, the ordinance requires that fifty percent of "the total buildable area" be dedicated to open space. Id. § 13.5, f.
The conservation easement held by the town encompasses fifty of the property's approximately seventy-seven acres. These fifty acres are already permanently preserved as open space; this portion of the property cannot be developed under the terms of the easement deed. To grant the plaintiff a variance to use this land to satisfy the open space requirements for his subdivision would result in the development of fourteen single-family homes on the entire remaining twenty-seven acres. We fail to see how permitting the plaintiff to use the conservation land in this manner would "unduly, and in a marked degree conflict with the ordinance." Malachy Glen, 155 N.H. at 105, 920 A.2d 1192 (quotation omitted; emphasis added). The plaintiff does not seek to develop the conservation easement land in any way; rather, he seeks to identify it as the open space land necessary to satisfy the applicable ordinance requirements. We believe, as a matter of law, that this in no way conflicts with the ordinance's basic zoning objectives to conserve and preserve open space.
The town argues that granting the variance would conflict with the ordinance because it would allow the plaintiff "to increase the lot density of the remaining 27 acres from 7-9 house lots to 14 house lots with no preservation of open space that would otherwise justify the added density." The plaintiff, however, is not seeking a variance to increase the lot density on his property without preserving open space, but rather he seeks a variance to include that portion of his land burdened by a conservation easement as satisfying the open space requirement. As we stated above, this does not conflict in any way with the ordinance. Accordingly, we reverse the trial court's decision on this issue as the evidence does not support it.
Because the trial court limited its review of the ZBA's denial of the plaintiff's variance to the spirit of the ordinance and public interest criteria, we will not address the remaining variance criteria on appeal and remand for the trial court to consider the unnecessary hardship and substantial justice criteria in the first instance.
III. Quid Pro Quo Transaction
The plaintiff lastly argues that the trial court erred in affirming the ZBA's finding that there was insufficient evidence for it to determine that the previous owners' grant of the conservation easement to the town "was a quid pro quo transaction for Planning Board approval of the original *163 condominium plan." He argues that the ZBA relied upon its finding of insufficient evidence in denying his variance request and that a finding on this point in his favor would support granting him a variance.
After considering the evidence before it, the ZBA found that "[t]he evidence presented on this issue was insufficient for the ZBA to find either way." The trial court found that this decision was reasonable and lawful and supported by the certified record. Such a finding by the trial court is equivalent to a ruling that the plaintiff failed to carry his burden of proof on this issue. Kalil, 155 N.H. at 309, 922 A.2d 672. Based upon the record before us, we cannot say that the trial court's decision was unsupported by the evidence or legally erroneous.
Affirmed in part; reversed in part; and remanded.
BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.