# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0583, <u>Patricia Morris & a. v. Town of Barnstead</u>, the court on February 14, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The plaintiffs, Patricia Morris and Jerad Davis, appeal orders of the Superior Court (<u>Houran</u> and <u>Leonard</u>, JJ.) in their appeal from decisions of the planning board and zoning board (ZBA) of the defendant, the Town of Barnstead (Town). Industrial Tower and Wireless, LLC (ITW), an intervenor in the superior court action, cross-appeals other orders by the Superior Court (<u>O'Neill</u>, J.) in this case.  The Town joins in ITW's brief.  We affirm.

The following facts and relevant procedural history are taken from the trial court orders in this case.  In early 2020, ITW filed an application for site plan review with the planning board, seeking to build a 175-foot open lattice communications tower and associated equipment storage sheds on a 39.6 acre wooded parcel owned by a third party.  The proposed tower would be located 329 feet from the plaintiffs' property line.

The planning board held two public hearings on ITW's application in May 2020.  In a letter dated May 7, 2020, Morris argued to the planning board that ITW is a business subject to Section 8-1 of the Barnstead Zoning Ordinance (BZO).  The planning board approved the application without mentioning Section 8-1 during any of its meetings.

The plaintiffs[1] appealed the planning board's decision to the ZBA, arguing, among other things, that the planning board misapplied Section 8-1. ITW filed a motion to dismiss, which the ZBA granted, concluding that it "found no connection between the arguments raised by the plaintiffs and the applicable sections of the [BZO]."  In other words, and as the trial court interpreted the ZBA's ruling, the ZBA concluded that it lacked jurisdiction over the plaintiffs' administrative appeal.  The plaintiffs filed a motion for rehearing, seeking, among other things, review of the planning board's alleged

---

[1] The record is unclear as to whether both plaintiffs participated at each step of the proceedings leading up to this appeal.  Because the parties treat them as having done so, we do the same.

misapplication of Section 8-1. The ZBA denied the motion, reiterating its prior ruling, but also adding the following additional reason:

> While it was not explicit in the Planning Board decision, it seems likely that the Planning Board determined that under the [BZO], the proposed Communications tower is a commercial tower owned and operated by a business outside of Barnstead and not a business located in Barnstead. This is a reasonable position and consistent with the treatment of land-line telephone property as property owned by a business located elsewhere.

The plaintiffs filed an appeal in superior court challenging the planning board's approval of ITW's site plan application and the ZBA's denial of their administrative appeal. On June 4, 2021, the Trial Court (O'Neill, J.) ruled that the ZBA erred in finding that it lacked jurisdiction and remanded to the ZBA to consider the plaintiffs' appeal.

ITW filed a motion for reconsideration and, in the alternative, clarification to, among other things, "ensure that the ZBA determines only the question which the Court is remanding." The court denied reconsideration but directed the ZBA to answer the following question on remand: "Did the Barnstead Planning Board err in interpreting Section 8-1 of the Barnstead Zoning Ordinance to be inapplicable to ITW's proposed Commercial Tower?" The court further clarified that in its June 4 order, it did not "consider . . . [or rule upon] any matters/arguments relating to the Planning Board approval of the site plan," and stayed the appeal pending the ZBA's determination of the matter on remand.

Following a public hearing, the ZBA answered "no" to the remanded question. After the ZBA denied their request for a rehearing, the plaintiffs amended their superior court appeal to challenge that determination by the ZBA.

In an order dated June 3, 2022, the Trial Court (Houran, J.) denied the plaintiffs' ZBA appeal, ruling that "the ZBA had a sufficient basis to conclude the Planning Board did not err in interpreting Section 8-1 of the [BZO] to be inapplicable to ITW's proposed Commercial Tower."

The plaintiffs filed a motion for reconsideration and clarification of the June 3 order. The Trial Court (Houran, J.) issued an order denying the request for reconsideration and clarifying that the June 3 order did not resolve all issues in the case, but only the issue remanded to the ZBA in the June 4, 2021 order. Accordingly, in an order issued on August 16, 2022, the Trial Court (Leonard, J.) ruled on the plaintiffs' remaining challenges to the planning board's decision. The court granted the appeal in part — ruling that the planning board acted unreasonably or unlawfully in finding that ITW had fully

satisfied the requirement contained in Section 3.2(J) of the Town's non-residential site plan review regulation — but denied it in all other respects, and remanded to the planning board to receive evidence of ITW's compliance with Section 3.2(J) and, thereafter, to confirm the same. The plaintiffs filed a motion for reconsideration and clarification, which the trial court denied.

In September 2022, ITW filed a motion for entry of final judgment in its favor, informing the court that the planning board had confirmed ITW's compliance with Section 3.2(J). The Trial Court (Leonard, J.) granted the motion, thereby affirming the planning board's site plan approval. The plaintiffs then filed the instant appeal, challenging the trial court's affirmance of the ZBA's decision on the remanded question and of the planning board's approval of ITW's site plan. ITW cross-appealed, challenging the trial court's ruling that the ZBA had jurisdiction over the administrative appeal and, in turn, the trial court's own assertion of subject matter jurisdiction over the plaintiffs' appeal of the planning board's site plan approval decision.

This appeal and cross-appeal require us to review superior court orders in appeals from decisions of the planning board and the ZBA. "The superior court was obligated to treat the factual findings of both boards as prima facie lawful and reasonable and could not set aside their decisions absent unreasonableness or an identified error of law." Hannigan v. City of Concord, 144 N.H. 68, 70 (1999). "We will uphold the superior court's decision unless it is unsupported by the evidence or is legally erroneous." Id.

We first consider ITW's cross-appeal, as it challenges the trial court's subject matter jurisdiction. See DHB v. Town of Pembroke, 152 N.H. 314, 317 (2005). Specifically, ITW contends that the superior court lacked jurisdiction because the plaintiffs' appeal to the superior court, filed 130 days after the planning board's decision approving ITW's site plan, was untimely. The plaintiffs counter that their appeal was timely filed under the "dual track for appeals" set forth in RSA 676:5, III and RSA 677:15, I-a because the trial court correctly found that the planning board "made an implied decision under the terms of the BZO." See RSA 676:5, III (2016) (governing appeals to the ZBA); RSA 677:15, I-a (2016) (detailing procedures for appealing planning board decisions where some issues are appealable to the ZBA); see also Anthony v. Town of Plaistow, 175 N.H. 762, 767 (2023) (explaining statutory scheme). The issue before us, then, is whether the trial court erred in concluding that the planning board "is assumed to have considered said ordinance after [Morris] raised it during the public hearing, and made a determination on same."

The trial court noted:

In a letter sent to the Planning Board dated May 7, 2020, Morris argued that ITW is a business [that] is subject to Section 8 of the [BZO], among other things. She also submitted an additional letter

3

dated May 21, 2020, and spoke at the May 5 and 21 hearings. One of the letters was submitted . . . at the May 21 hearing, but it is unclear from the record which letter. However, both letters are contained within the Certified Record and the Planning Board does not dispute receiving same.

(Citations omitted.) We conclude that the trial court, based upon the evidence before it, reasonably could have determined that the issue was before the planning board for its consideration. See Anthony, 175 N.H. at 770 (reciting standard of review and facts noted by trial court before upholding trial court's conclusion that "the planning board considered and implicitly found that the project did not have a potential for regional impact").

The trial court further found that the planning board must have reached one of two alternative conclusions, although the court could not determine which of them the planning board actually reached: either ITW's proposed tower was a business that satisfied Section 8-1 or it was not a business and, therefore, Section 8-1 did not apply. Accordingly, the trial court ruled, the planning board made a "decision or determination . . . based upon the terms of the zoning ordinance, or upon any construction, interpretation, or application of the zoning ordinance." RSA 676:5, III.

ITW challenges that ruling. It acknowledges that "a local board can be found to have made an implied determination where the determination was a required step in deciding an application," but contends that the Section 8-1 issue "did not need to be decided in order for the Planning Board to approve ITW's site plan." We disagree. Section 8-1 provides, in pertinent part, that "[a]ny business may be located in Barnstead upon application and approval of the Planning Board, Selectman and Health Officer; and provided that [certain requirements are met]." (Emphasis added.) The planning board's approval of a site plan locating ITW's proposed tower in Barnstead necessarily required a finding that the proposed tower was either a business compliant with Section 8-1's requirements or not a business subject to Section 8-1 at all.

ITW nevertheless suggests that the planning board may have "simply . . . ignored" the plaintiffs' contention that compliance with Section 8-1 was necessary. ITW cites no evidence for this possibility, other than the length of the submission containing the plaintiffs' Section 8-1 argument and the planning board's failure to discuss or explicitly rule upon the issue. We cannot conclude, based upon this scant evidence, that the planning board ignored an issue raised before it and necessary to its decision. Moreover, we "must assume that the [planning board] made subsidiary findings necessary to support its general ruling." State v. Palermo, 168 N.H. 387, 394 (2015) (quotation omitted) (addressing trial court ruling); see Rochester City Council v. Rochester Zoning Bd. of Adjustment, 171 N.H. 271, 276 (2018) (concluding ZBA's failure to "explicitly address unnecessary hardship in its written

4

decision" was not error because "the ZBA's grant of a variance carries with it an implicit finding of hardship").

ITW further argues that "the 'assumed determination' doctrine adopted by the Superior Court herein would . . . require[] parties to guess the date on which an assumed determination was made." We disagree. A determination implied, as here, from a planning board's approval of a site plan is necessarily made at the time of such approval.

Finally, we note that ITW's brief recites a procedural history in which the plaintiffs "changed their position" during their administrative appeal and only raised an "implicit determination" argument on rehearing. To the extent this factual recitation could be read to suggest that the issue is not preserved or otherwise not properly before us, ITW fails to develop any such argument. Accordingly, we decline to address it. See Town of Dunbarton v. Guiney, 173 N.H. 1, 9 n.5 (2020) (declining to address insufficiently developed argument).

For the foregoing reasons, we conclude that the trial court did not err in determining that the ZBA, and therefore the trial court in turn, had jurisdiction. We now turn to the plaintiffs' appellate issues.

The plaintiffs first contend that the trial court erred in determining that Section 8-1 does not apply to ITW's tower, and, more specifically, argue that the trial court erred in: (1) showing deference to the ZBA's interpretation of the BZO; (2) failing to interpret the BZO according to well-settled canons of construction; and (3) declining to consider the merits of the plaintiffs' administrative gloss argument. The plaintiffs further urge us to rule that the ZBA impermissibly applied an administrative gloss.

We need not address the plaintiffs' specific claims of trial court error, however, because "[t]he interpretation of a zoning ordinance is a question of law, which we review de novo." Town of Lincoln v. Chenard, 174 N.H. 762, 765 (2022) (quotation omitted). "We use the traditional rules of statutory construction when interpreting zoning ordinances." Working Stiff Partners v. City of Portsmouth, 172 N.H. 611, 615 (2019). "We construe the words and phrases of an ordinance according to the common and approved usage of the language, but where the ordinance defines the terms in issue, those definitions will govern." Id. at 615-16 (citation omitted). "Furthermore, we determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases." Id. at 616.

The BZO defines "[b]usiness" to mean "[a]ctivities of buying and selling; trade; commercial dealings, commercial enterprise, industrial establishments." The plaintiffs argue that the BZO does not define the terms contained within its definition of business — namely, "trade," "commercial," "dealings," "enterprise," "industrial," and "establishment"— and assert that, looking at the dictionary

definitions of those terms, ITW's proposed tower "falls under the definition of 'business' and is, therefore, subject to Section 8-1." We conclude, however, that the plaintiffs' interpretation cannot stand in light of another provision of the BZO that undisputedly applies to ITW's proposed tower.

The BZO defines the term "[c]ommercial towers" to mean "[a]ny towers that are used for commercial purposes" and further defines three subcategories of such towers, including "[w]ireless [t]elecommunication [f]acilities":

> any structure that is designed and constructed primarily for the purpose of supporting one or more antennas constructed from grade, including self-supporting lattice towers, guy towers, or monopole towers. The term includes radio and television transmission towers, microwave towers, common-carrier towers, cellular telephone towers, and alternative tower structures used for similar purposes.

The plaintiffs do not dispute that ITW's proposed tower is a "commercial tower," but, rather, argue that "a 'commercial tower' is a subset use of 'business'" and "a use may constitute both a 'business' and 'commercial tower' where such use meets both definitions." Thus, under the plaintiffs' expansive interpretation, all commercial towers are businesses under Section 8-1.

As the trial court observed, the provision defining commercial towers specifically provides that "[a]ll towers must be located as permitted in Article 14, Table 1 of this Ordinance." That provision would be unnecessary if "commercial towers" were "businesses" under the BZO because Section 8.1.5 provides that "[a]ny business must additionally conform to the requirements of Article 14 of this Ordinance regarding Zoning Districts." Accordingly, the plaintiffs' interpretation violates the canon of construction that the drafters of an enactment are "not presumed to waste words or enact redundant provisions and whenever possible, every word of [the enactment] should be given effect." Appeal of Town of Lincoln, 172 N.H. 244, 248 (2019) (construing statute); Hannigan, 144 N.H. at 71 (rejecting party's argument that would have rendered the definition of a term in a zoning ordinance superfluous). Accordingly, we conclude that the trial court did not err in upholding the ZBA's determination that ITW's proposed tower is not a business subject to Section 8-1 of the BZO.

The plaintiffs next argue that the trial court erred in upholding the planning board's determination that ITW's project complied with Section 4.4 of the planning board's non-residential site plan review regulation, which provides that "[l]andscaping and screening shall be provided with regard to adjacent properties, the public highway and within the site including interior landscaping of large parking areas, (over three double rows)." The plaintiffs contend that "[b]ased on the plain and ordinary meaning of the word 'screening,' Section 4.4 . . . requires applicants to provide something that

conceals a proposed use from view of <u>both</u> adjacent properties and public highways." They then assert that, based upon the facts in the record, including that the proposed tower will extend approximately 100 feet above the tree line, the proposed tower "will be clearly visible from abutting properties; in other words, it will not be screened." They contend that the trial court erred in ruling that Section 4.4 "does not require that the proposed Tower be screened, or concealed from view, in its entirety."

However, Section 4.4 does not contain language explicitly requiring the entirety of a structure to be screened from view, and we will not add language the drafters of the ordinance did not see fit to include. <u>See</u> <u>Naser v. Town of Deering Zoning Bd. of Adjustment</u>, 157 N.H. 322, 324 (2008). Accordingly, we conclude that the trial court did not err in its interpretation of Section 4.4. To the extent that the plaintiffs' remaining arguments could be read to stand independently of their contention that Section 4.4 requires screening the entirety of the proposed tower, they fail to persuade us that the trial court's order "is unsupported by the evidence or is legally erroneous." <u>Hannigan</u>, 144 N.H. at 70.

<u>Affirmed</u>.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,<br>Clerk**