Hillsborough–northern judicial district
No. 2000-050

## NBAC Corp.

v.

## Town of Weare

December 21, 2001

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Michael R. Callahan* and *Donald E. Gartrell* on the brief, and *Mr. Callahan* orally), for the plaintiff.

*Nixon, Raiche, Manning, Casinghino & Leach, P.A.*, of Manchester (*Kevin M. Leach* on the brief and orally), for the defendant.

DUGGAN, J. This is an appeal by the plaintiff, NBAC Corp. (NBAC), from an order of the Superior Court (*Perkins*, J.) affirming the Town of Weare (town) Board of Selectmen's (selectmen) denial of NBAC's application to conduct sand and gravel excavation. We affirm.

NBAC is the owner of a 30.7 acre, undeveloped lot located west of Route 114 in Weare. The lot is approximately one-half mile from the center of town, and is in close proximity to the town's middle and elementary schools. The lot is in a commercial zone, where gravel operations are allowed if the owner obtains a special exception from the town's zoning board of adjustment (ZBA) and then receives an excavation permit from the selectmen.

In March 1998, NBAC applied for a special exception. In its application, NBAC represented to the ZBA that the lot was not located in an aquifer protection zone. After considering the factors outlined in the zoning ordinance and public comments, the ZBA granted a special exception with conditions to conduct gravel operations on the lot. The town planning board filed a motion for rehearing before the ZBA, claiming that the excavation pit failed to satisfy certain requirements under the zoning ordinance. The ZBA denied the planning board's motion. The planning board did not appeal and, subsequently, the special exception became final.

In May 1998, NBAC filed an application for an excavation permit with the selectmen, requesting to remove approximately 615,000 cubic yards of material from 12.8 acres of the lot. *See* TOWN OF WEARE EARTH PRODUCTS ORDINANCE §§ 1, 3 (1992). The selectmen scheduled several public hearings on the excavation permit. The residents, both at the public hearings and in letters sent to the selectmen, voiced their concerns, primarily regarding the impact the excavation pit would have on town traffic, safety, and aesthetics. At one public hearing, the selectmen became aware that the proposed excavation site was atop an aquifer. The town's experts ultimately determined, however, that the plans complied with the minimal operational standards set forth in RSA 155-E:4-a (Supp. 2000) and the TOWN OF WEARE EARTH PRODUCTS ORDINANCE § 6 (1992).

Although the plan complied with the minimal operational standards, the selectmen unanimously voted to deny NBAC's application for an excavation permit at a public hearing held on October 19, 1998. According

to the minutes of that meeting, the selectmen explained their reasons as follows:

> *Selectman Slattum*— ... Selectman Slattum feels the NBAC pit will be injurious to the public welfare and believes it will be visible from the road. Selectman Slattum said he thinks the pit could have a profoundly detrimental impact on the environment, Duck Pond and the aquifer. Property values will be effected [*sic*] and the pit will have a detrimental effect on the character of the Town of Weare. Again, Selectman Slattum stated he would not be supporting the motion.
>
> *Selectman Hatch*— ... Selectman Hatch feels the application carries with it a defective variance because it was presented to the ZBA with a false statement that it did not exist over an aquifer. Selectman Hatch feels the pit is not in the best interest of the community and that it is the Board's job to make decisions which are in the best interest of the Town. Selectman Hatch said the Selectmen were elected to run the prudent affairs of the Town, on behalf of the community as a whole, and that it would not be responsible for this Board to approve the proposed project.
>
> *Chairman Methot*— ... Chairman Methot said it is his opinion the application is defective and that it does not fully comply with all the parts of the Earth Products Ordinance. Chairman Methot feels the gravel operation would have a long term negative impact on the aquifer and be injurious to the residents of the town as well as the Town's welfare.

NBAC subsequently filed a motion for rehearing, which the selectmen denied.

NBAC appealed to the superior court, arguing that the selectmen's decision was unlawful and unreasonable because the selectmen lacked any legal or evidentiary basis for their conclusion that the permit should be denied. NBAC also argued that the selectmen were precluded from reconsidering the issues decided by the ZBA. The superior court denied NBAC's appeal, holding that the selectmen's determination that the excavation plan would be unduly hazardous to public welfare was reasonable and legal. The superior court further held that the town was not barred by collateral estoppel from denying the excavation permit.

On appeal, NBAC first argues that the selectmen failed to provide adequate reasons why the various standards had not been met. Pursuant to RSA 155-E:7 (1994), the regulator "shall render a decision approving or disapproving the application, *giving reasons for disapproval*." (Emphasis

added.) As discussed above, the minutes of the October 19, 1998 town meeting reflect the selectmen's explanation why they denied the excavation permit. NBAC contends that those "reasons" are insufficient because the selectmen failed to articulate findings to support the decision that the gravel operation would be injurious to the public welfare. As such, NBAC argues that it was denied meaningful review because the superior court was forced to speculate as to which portions of the record supported the selectmen's decision.

The town argues that NBAC waived this issue by failing to address it in its motion for rehearing before the selectmen. Pursuant to RSA 677:3, I (1996 & Supp. 2000), "no ground not set forth in the application [for rehearing] shall be urged, relied on, or given any consideration by a court unless the court for good cause shown shall allow the appellant to specify additional grounds." The purpose of the rehearing process is to provide the board with the opportunity to correct any action it has taken, if correction is necessary, before an appeal to court is filed. *Fisher v. Town of Boscawen*, 121 N.H. 438, 440 (1981) (decided under former RSA 31:74-:76 (Supp. 1979)). Here, the first time NBAC addressed this issue was in its motion for reconsideration filed with the superior court. Because NBAC failed to properly preserve this issue, we deem it waived.

NBAC next argues that the superior court improperly affirmed the selectmen's decision based upon the mere existence of some evidence to support that decision, without regard for the weight of that evidence. NBAC contends that because the superior court was required to determine whether, *on a balance of probabilities*, the decision was unreasonable, *see* RSA 677:15, V (Supp. 2000), the superior court needed to do more than simply determine that there was sufficient evidence to support the selectmen's decision. Rather, NBAC argues that the superior court was required to weigh the credibility of the evidence.

In reviewing the selectmen's decision, the superior court applied the standard of review as set forth in RSA 677:15, which governs the decisions of planning boards and requires reversal only in the event that the superior court "is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable." It should initially be noted that because the superior court was reviewing the decision of the selectmen, a legislative body, the superior court's review of the selectmen's decision is actually governed by RSA 677:6 (1996) rather than RSA 677:15. Because NBAC does not appeal the superior court's use of RSA 677:15 and because both statutes apply the same standard, we shall review the selectmen's decision using RSA 677:15 for purposes of this decision only.

When a trial court's review of the selectmen's decision is appealed, we will "uphold the trial court unless its decision is not supported by the evidence or is legally erroneous." *Star Vector Corp. v. Town of Windham*, 146 N.H. 490, 493 (2001). "We look to whether a reasonable person could have reached the same decision as the trial court based on the evidence before it." *Id.* (quotation omitted). If any of the selectmen's reasons for denial of the excavation permit support its decision, then the plaintiff's appeal must fail. *Cf. Ettlingen Homes v. Town of Derry*, 141 N.H. 296, 297 (1996).

In deciding to grant or deny the excavation permit, the selectmen were required to determine if the excavation would be considered a "prohibited project." *See* RSA 155-E:4 (1994); *see also* TOWN OF WEARE EARTH PRODUCTS ORDINANCE § 5 (1992). In making this determination, the selectmen were required to consider whether: (1) the excavation would violate the Operation Standards of section 6 of the TOWN OF WEARE EARTH PRODUCTS ORDINANCE; (2) the excavation would occur within prohibited boundaries; (3) the issuance of a permit would be unduly hazardous or injurious to the public welfare, or would unduly endanger the safety of highway users or local residents; (4) the excavation would substantially damage a known aquifer; (5) the project would comply with Reclamation Standards as set forth in the TOWN OF WEARE EARTH PRODUCTS ORDINANCE; (6) the excavation would take place within four feet of any water table; and (7) existing visual barriers to public highways would be removed. *See* RSA 155-E:4; *see also* TOWN OF WEARE EARTH PRODUCTS ORDINANCE § 5.

The selectmen denied NBAC's permit on the basis that the excavation pit was a prohibited project because it: (1) would be injurious to public welfare and the residents of the town, which included having a detrimental effect on the property values and the character of the town; (2) may be visible from the road; and (3) could have a detrimental effect on the environment, Duck Pond and the aquifer. So long as one of these reasons supports the denial of the permit, the superior court was required to sustain the selectmen's decision. *See Durant v. Town of Dunbarton*, 121 N.H. 352, 354 (1981).

Although the selectmen did not specifically articulate their findings to support the above conclusions, the superior court determined that there was sufficient evidence to support the selectmen's denial of a permit on the basis that the gravel pit would be injurious to the public welfare of the town. In upholding the selectmen's finding, the superior court noted that this court has held that

[t]he concept of public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.

*Asselin v. Town of Conway*, 137 N.H. 368, 371 (1993). After reviewing the record, the superior court concluded that there was sufficient evidence to support a finding that there would be adverse effects to the aesthetics, health and safety, spiritual well being and economics of the town, in addition to concerns regarding pollution and changes to the lot's topography.

█ After reviewing the record, we cannot hold that no reasonable person would have found as the superior court did. The superior court's decision is supported by numerous letters to the selectmen regarding concerns surrounding the excavation pit. Here, NBAC had the burden to prove that the evidence lacked credibility, and therefore the selectmen's decision should be set aside. After reviewing the portions of the record upon which the superior court relied, we cannot say that NBAC met this burden. Thus, the superior court properly determined that there was a sufficient evidentiary basis for denying the plaintiff's application on the ground that it would be injurious to the public welfare of the town. *See Davis v. Town of Barringtown*, 127 N.H. 202, 208 (1985), *appeal after remand*, 144 N.H. 345 (1999).

Lastly, NBAC argues that because no appeal was taken from the grant of the special exception and the underlying findings of the ZBA, the selectmen were precluded from denying the excavation permit on the grounds previously considered by the ZBA. The doctrine of issue preclusion, or collateral estoppel, operates to prevent a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action. *Grossman v. Murray*, 141 N.H. 265, 269 (1996).

█ Even if we accepted NBAC's proposition that the selectmen were bound by the ZBA's determination that NBAC satisfied the criteria for a special exception, there was sufficient evidence in the record for the superior court to uphold the selectmen's denial of NBAC's application on other grounds. In its determination to deny the excavation permit, the selectmen considered several issues distinct from the ZBA. For example, the selectmen considered topographical and pollution concerns resulting

from the excavation. Additionally, the selectmen considered whether the excavation pit would be injurious to the town's public welfare due to its adverse effects on aesthetics, health and safety and spiritual well being. As these issues were not specifically addressed by the ZBA, the application of collateral estoppel would not change the outcome of this case.

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred.