Grafton
No. 2002-538

BAYSON PROPERTIES, INC. & a.

v.

CITY OF LEBANON

Argued: May 7, 2003
Opinion Issued: October 24, 2003

*Cleveland, Waters and Bass, P.A.*, of Concord (*David W. Rayment* on the brief and orally), for the plaintiffs.

*Gardner Fulton & Waugh P.L.L.C.*, of Lebanon (*H. Bernard Waugh, Jr.* on the brief and orally), for the defendant.

*Schuster, Buttrey & Wing, P.A.*, of Lebanon (*Barry C. Schuster* on the brief and orally), for the intervenor, A.D. McKibbin.

BROCK, C.J. The plaintiffs, Bayson Properties, Inc. (Bayson) and Hannaford Brothers Co. (Hannaford), appeal a decision of the Superior Court (*Smith*, J.) affirming a decision of the planning board (board) of the defendant, the City of Lebanon, denying their site plan application to construct a 56,000 square foot grocery store and a parking lot with 302 parking spaces located between Heater Road and Route 120 in Lebanon. We affirm.

Bayson is the owner of the site and Hannaford is the prospective developer and owner of the proposed grocery store. In March 2000, the board voted to accept the plaintiffs' application for site plan approval. In April 2000, the plaintiffs voluntarily withdrew their application at the request of the defendant's planning director because he determined that they first needed to obtain a special exception for wetland disturbance from the Lebanon Zoning Board of Adjustment (ZBA). *See McKibbin v. City of Lebanon*, 149 N.H. 59 (2003).

After obtaining a special exception from the ZBA, the plaintiffs refiled their application with the board, which voted in October 2000 to accept it for review. Between October 2000 and May 2001, the board held seven public hearings on the application and conducted an official site visit. Most of the public hearings exceeded three hours in length. On May 14, 2001, after a deliberative session, the board denied site plan approval by a four to three vote. The decision cited, as reasons for the denial, failure to

comply with landscaping and traffic regulations. The plaintiffs appealed that decision to the superior court, which upheld the board's decision.

The plaintiffs argue on appeal that the trial court erred: (1) by applying the wrong standard of review; (2) in ruling that the plaintiffs failed to preserve the issue of bias; and (3) in upholding the board's decision that the plaintiffs failed to satisfy the applicable site plan regulations. In addition, the plaintiffs argue that the board's decision effectively rezoned their property, failed to provide appropriate guidance, elevated the property rights of one property owner over another, and violated the plaintiffs' equal protection rights.

*I. Standard of Review*

The trial court's decision states that "[t]he standard of review under RSA 677:15 is clear. Pursuant to RSA 677:6 all the Board's findings are deemed prima facie lawful and reasonable. The Board's decisions cannot be set aside unless the Court finds an error of law, or is persuaded by the balance of the probabilities that the decision of the Board is unreasonable." The plaintiffs argue that the trial court erred when it referred to RSA 677:6 (1996) and stated that the "Board's findings are deemed prima facie lawful and reasonable." They contend that the standard under RSA 677:15 (Supp. 2002) is less deferential, and that the trial court should not have presumed the board's findings to be *prima facie* lawful and reasonable. The plaintiffs argue that "[t]he statutes essentially contemplate . . . a *de novo* hearing on decisions of planning boards, as opposed to a much more restricted and limited review of zoning board and municipal legislative body decisions."

RSA 677:6 governs appeals from decisions of the zoning board of adjustment and local legislative bodies. RSA 677:15 governs appeals from decisions of the planning board. Although the language of the two provisions is somewhat different, we have consistently applied the same standard of review in appeals brought under RSA 677:6 and RSA 677:15: the burden of proof is on the party seeking to set aside the decision of the zoning board or planning board to show that the decision is unlawful or unreasonable. *See Peter Christian's Inc. v. Town of Hanover*, 132 N.H. 677, 683 (1990) (zoning board); *Durant v. Town of Dunbarton*, 121 N.H. 352, 357 (1981) (planning board) (decided under prior law). Under either statute, the appealing party must demonstrate that an error of law was committed or must persuade the trial court by the balance of probabilities that the board's decision was unreasonable. *See Star Vector Corp. v. Town of Windham*, 146 N.H. 490, 492-93 (2001); *Burke v. Town of Jaffrey*, 122 N.H. 510, 513 (1982).

■ We have expressly recognized that "both [RSA 677:6 and :15] apply the same standard." *NBAC Corp. v. Town of Weare*, 147 N.H. 328, 331 (2001). "The superior court [is] obligated to treat the factual findings of both [the zoning board and the planning board] as *prima facie* lawful and reasonable and [can]not set aside their decisions absent unreasonableness or an identified error of law." *Hannigan v. City of Concord*, 144 N.H. 68, 70 (1999). Judicial review of decisions of zoning and planning boards is limited. Such review is entirely discretionary with the superior court and "is ordinarily confined to the record of the lower tribunal." *Price v. Planning Board*, 120 N.H. 481, 486 (1980) (discussing certiorari review generally). While additional evidence may be introduced in the trial court, there is no trial *de novo*. *See Beaudoin v. Rye Beach Village Dist.*, 116 N.H. 768, 770 (1976). "The purpose of the statutory provisions for the receipt of additional evidence is not to afford the appealing party a trial *de novo*, which is no longer available, but rather to assist the court in evaluating the action of the board." *Webster v. Town of Candia*, 146 N.H. 430, 443 (2001) (quotation and ellipsis omitted).

■ The plaintiffs' appeal was heard and determined on the certified record. The court's decision correctly acknowledges that the decision of the board could not be set aside unless the court found an error of law or was persuaded by the balance of probabilities that the decision was unreasonable. We hold that the trial court applied the correct standard of review.

*II. Bias*

■ The plaintiffs argued before the trial court that certain board members, in particular acting chairman Cormen, had prejudged the application, determining that there would be no commercial use of the plaintiffs' property. The court ruled that the plaintiffs failed to raise the issue of bias at the earliest possible time in the proceedings before the board and therefore waived the issue. On appeal, the plaintiffs argue that this ruling was erroneous because the plaintiffs were statutorily prohibited from raising the issue of bias and furthermore that they raised the issue as soon as they became aware of it.

The plaintiffs rely on RSA 673:14, II (1996), which provides:

> When uncertainty arises as to [whether a board member should be disqualified] the board shall, upon the request of that member or another member of the board, vote on the question of whether that member should be disqualified. Any such request and vote shall be made prior to or at the commencement of any required

public hearing. Such a vote shall be advisory and non-binding, and may not be requested by persons other than board members

. . . .

The plaintiffs argue that this statutory provision precludes them from making an objection to the participation of particular board members on a matter before it. According to its plain meaning, however, the statute addresses only the process by which the board votes to exclude participation by a member once the issue of disqualification has been raised. The statute does not place restrictions on who may object to the participation of board members; the plaintiffs were not statutorily prohibited from raising the issue.

■ A party claiming bias on the part of a planning board member must raise that issue before the board at the earliest possible time. *See Sanderson v. Town of Candia*, 146 N.H. 598, 602 (2001). "We require issues to be raised at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance." *Id.* (quotation omitted). As the trial court correctly noted, the burden was on the plaintiffs to raise an objection to the participation of chairman Cormen when it became aware of the grounds for the objection.

In this case, the plaintiffs had knowledge of the facts upon which they claim bias before the hearings on their application began. At the first public hearing on October 30, 2000, chairman Cormen directly addressed her participation in the board's recommendation to the council to rezone the area around Heater Road, including the plaintiffs' property. The minutes of that hearing reflect the following:

> Chairman Cormen emphasized that the rezoning hearings are separate from and independent of this site plan review process which is being undertaken at this meeting. She assured both the Planning Board, the applicant and the public that she, as one of the people who voted for rezoning [the site] will chair the site plan review fairly and impartially. She also asked any member of the Planning Board who felt that they might not be able to comport themselves similarly to step down at this time. No Planning Board members stepped down.
>
> *Chair Cormen also asked if the applicant or any member of the public had an issue believing that any member of the Planning Board was prejudiced with regard to this site plan review to raise their objection and state the Board member they are*

> *requesting to step down and on what specific basis. No such*
> *objections were raised.*

(Emphasis added.)

The plaintiffs argue that they did in fact raise an objection, at the earliest possible time, at the January 16, 2001 hearing when they assert that it became apparent the chair was not impartial. The minutes reflect that the plaintiffs' attorney

> noted that the project proposed is consistent with the zoning for that lot. He noted that there was an effort to rezone that property which failed, and he is sure that some members of the Planning Board were in favor of that rezoning. He pointed out that the property is in a commercial zone and the project proposed is an allowed use in that zone; he feels that there are people on the Board who do not appear to like the fact that it is a commercial zone and the proposed use is an allowed use.

■ We agree with the trial court that these comments "have questionable merit as a legitimate objection." However, even if the comments are taken as an objection, they reflect no information that chairman Cormen failed to raise at the October 30, 2000 hearing. Waiting until after eleven hours of hearings held over three months to raise a concern about alleged bias of board members does not fulfill the plaintiffs' obligation to raise the issue at the earliest possible time. "In governmental proceedings, interested parties are entitled to object to any error they perceive but they are not entitled to take later advantage of error they could have discovered or chose to ignore at the very moment when it could have been corrected." *Star Vector Corp.*, 146 N.H. at 494 (quotation and ellipsis omitted). We hold that the trial court's ruling that the plaintiffs failed to make a timely objection to chairman Cormen's participation was not erroneous.

*III. Site Plan Regulations*

The plaintiffs argue that the trial court erred in upholding the board's decision that they failed to satisfy the site plan regulations regarding landscaping and traffic. "When reviewing a decision of a planning board, a trial court should determine on the record before it whether the decision was unreasonable or erroneous as a matter of law." *Id.* at 493. Upon review of a trial court's decision, "we will uphold the trial court unless its decision is not supported by the evidence or is legally erroneous." *Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 647 (2000) (quotation omitted). "We look to whether a reasonable person could have reached the

same decision as the trial court based on the evidence before it." *Id.* (quotation omitted). "If any of the board's reasons for denial support its decision, then the plaintiff's appeal must fail." *Durant,* 121 N.H. at 354.

In its decision, the board found that the plaintiffs' application failed to comply with the landscaping and buffering requirements set forth in Purposes for Landscaping Standards sections 6.2.A.1, 2, 3, 4 and 8 and Additional Buffers section 6.2.C. of the City of Lebanon site plan regulations. These sections provide:

A. Purpose

Landscaping shall be required around the perimeter of the parcel, in the parking area, and around the buildings to meet the following objectives:

1. To enhance the overall visual attractiveness of the building, the site, and the City;

2. To protect and preserve the appearance, character, and value of surrounding neighborhoods by improving the compatibility between different land uses in the City and by buffering neighboring properties and areas from any adverse effects of site development;

3. To mitigate the appearance and aesthetic impact of accessory uses (such as loading areas, dumpsters, utility equipment and areas, storage areas, and parking areas) with appropriate screening and landscaping as warranted;

4. To facilitate safe movement of pedestrian and vehicular traffic onto, around, and over a site, and to protect pedestrian movement in areas with vehicular traffic;

. . . .

8. To soften glare, filter noise and air pollution, create privacy, and provide an attractive boundary between properties.

. . . .

C. Additional Buffers

The Planning Board may require wider buffers when required by overlay districts or when required by special circumstances associated with the parcel, such as roadways of special character or those designated by the City as scenic roadways, commercial

development abutting residential development; and proximity to natural resources and historic landmarks.

The board determined that the difference between the general commercial use of the plaintiffs' site and the residential uses of the surrounding sites required a twenty-five foot landscape buffer and additional buffering "to remediate negative sight, noise and pollution impacts attendant to the proposed development, with respect to the abutting Genesis Elder Care lot." The plaintiffs argue that the board unreasonably applied these landscaping provisions to their application. They contend that the proposed twenty-five foot buffering wall would have provided adequate noise protection for abutting residences, and that no additional buffering was necessary.

The board was primarily concerned about the impact of noise generated from the driveway and loading dock on the Genesis Elder Care Facility located less than fifty feet from the plaintiffs' site. As the decision states, "The applicant has sited its proposed grocery store in that portion of the site lot which most closely abuts those lots on which residential or low-intensity office uses are currently situated. The applicant has, further, sited the location of the most intensive activities (the site driveway and loading dock) nearest to the Genesis Elder Care Facility."

The plaintiffs expect truck deliveries to the site of from two to four tractor-trailers per day, two to three days per week, and up to forty smaller vendor trucks per day. The plaintiffs offered to limit truck delivery hours to the site from 5 a.m. through 9 p.m. to alleviate noise generated from idling trucks, braking, back-up warning beeping, truck doors opening and closing and dock loading and to build a twenty-five-foot tall wall. The board found, however, that such voluntary provisions were "unrealistic" and "unenforceable" because: (1) "it is unclear to what extent the applicant can enforce the proposed restrictions on private vendor trucks"; (2) "testimony . . . indicate[d] that turning diesel truck engines on and off may be harmful to the longevity of such engines and that refrigeration compressors on some trucks would likely not be turned off during deliveries"; (3) the "difficulties inherent in enforcing the proposed restrictions . . . due to lack of city enforcement staff and the intermittent nature of potential noise and activity violations"; and (4) "the fact that many residents of the Genesis Elder Care facility sleep during the times in which the applicant anticipates the most intensive loading/unloading activities would take place."

█ The trial court found that "in light of these problems with the plaintiffs' voluntary restrictions, any one of which would be enough to

support a finding of reasonableness on the Board's part, ... the Board's finding, that the restrictions would not fully remediate potential noise concerns, thus justifying the imposition of additional buffers, was reasonable." We uphold the trial court's finding that the board's decision on this matter was reasonable.

*IV. Rezoning, Property Rights, Equal Protection*

The plaintiffs raise several additional issues, which we dispose of briefly. First, the plaintiffs argue that the board held them to such an impossibly high burden to satisfy the site plan regulations, that the effect is a rezoning of the property barring all commercial use. As discussed above, the board had sufficient evidence before it on which to base its conclusion that the applicant had not met the site plan regulations. The board's decision contains detailed findings of non-compliance with the site plan regulations. The board is authorized to impose conditions to protect the interests of the neighborhood in which the site is being located. *See Star Vector Corp.*, 146 N.H. at 493 (upholding planning board's denial of site plan approval for use permitted by zoning because of unacceptable public safety and environmental risk to neighborhood to which applicant proposed no mitigation); *Sklar Realty v. Town of Merrimack*, 125 N.H. 321, 327 (1984) (board's authority to impose conditions provides tool "to adjust the pursuit of private interests to reasonable regulation in the public interest").

There is no indication in the board's decision that the project was denied because it was commercial in nature. To the contrary, the board provided the plaintiffs with ample input and guidance for bringing the application into compliance with the site plan regulations. *See Richmond Co. v. City of Concord*, 149 N.H. 312, 315-16 (2003). The board's decision was "without prejudice to the applicant's right to submit a revised application that adequately addresses the Board's concerns." The fact that the plaintiffs were unwilling to reduce the size of the proposed building, relocate the proposed building or substantially change the layout of its site plan to enable it to meet the concerns of the board, does not establish a rezoning of the property.

Second, the plaintiffs argue that the board's decision unreasonably elevated the property rights of the abutters, including an existing elder care facility and other residential properties, over the plaintiffs' property rights. Site plan review takes into consideration how a structure will fit into the existing neighborhood. *See* P. LOUGHLIN, 15 NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 30.02, at 427 (3d ed. 2000). "The preparation of a site plan which takes into consideration all of the

anticipated effects of a proposed project is an important part of what good planning is all about . . . . Site plan review, in the early stages, takes into consideration how the building will fit into the neighborhood. This puts the safety and attractiveness of the building on an equal footing with its construction." *Id.* In addition, RSA 674:44, II(a)(3) (1996) authorizes site plan regulations to provide against "[u]ndesirable and preventable elements . . . such as noise . . . which might prove harmful to . . . adjacent properties." Because the decision of the board regarding the plaintiffs' noncompliance with the site plan regulations governing landscaping was reasonable, there are no grounds on which to hold that the abutters' property rights have been elevated above those of the plaintiffs.

Finally, the plaintiffs argue that the board violated their right to equal protection under the State and Federal Constitutions by subjecting them to a higher level of scrutiny than any other site plan applicant in the past five years. We first address their claim under the State Constitution, relying upon federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

To establish an equal protection violation, the plaintiffs must show that the state action in question treats similarly situated persons differently. *See McGraw v. Exeter Region Coop. Sch. Dist.*, 145 N.H. 709, 711 (2001). We agree with the trial court that the plaintiffs failed to cross this initial threshold. As the court noted, the plaintiffs "failed to produce evidence that any of these previous site plan applications were similar in nature, location, and scope to their application." *See Webster*, 146 N.H. at 444 (plaintiff's equal protection claim that of seven of the town's scenic roads, six are paved, did not on its face establish differential treatment of similarly situated landowners). Because the Federal Constitution offers the plaintiffs no greater protection than does the State Constitution under these circumstances, we reach the same result under the Federal Constitution as we do under the State Constitution. *Compare Petition of Abbott*, 139 N.H. 412, 417 (1995), *with Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440-42 (1985).

*Affirmed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.