Rockingham
No. 2004-103

LAURA FOX & a.

v.

TOWN OF GREENLAND & a.

TOWN OF NEWINGTON

v.

TOWN OF GREENLAND & a.

Argued: September 23, 2004
Opinion Issued: December 29, 2004

*Griffin & Pudloski, P.A.*, of Portsmouth (*Charles A. Griffin* on the joint brief and orally), and *Robert G. Eaton*, of Rye, on the joint brief, for petitioners Laura Fox & a.

*McNeill, Taylor & Gallo, P.A.*, of Dover (*William L. Tanguay* on the joint brief), for petitioner Town of Newington.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Robert E. Murphy, Jr.* and *William C. Tucker* on the brief, and *Mr. Murphy* orally), and *Noucas & Keenan, P.A.*, of Portsmouth (*Christopher W. Keenan* on the brief), for the intervenor, Packard Development, LLC.

DUGGAN, J. The petitioners are the Town of Newington and several owners of property close to or abutting property owned by the intervenor, Packard Development, LLC (Packard). They appeal an order of the Superior Court (*Perkins*, J.) reversing the decision of the Town of Greenland Zoning Board of Adjustment (ZBA), which had granted a special exception for construction of a retail sales shopping center in Greenland. The petitioners challenge the trial court's decision to remand the matter to the ZBA for a new hearing due to procedural errors. Packard filed a cross-appeal. We affirm in part, reverse in part, vacate the remedy and remand.

The record supports the following facts. In November 2001, Packard applied for a special exception to construct and operate a 300,000-square-foot retail sales mall on its industrial-zoned property. The proposed project would include a retail sales store, a home improvement store and a grocery store. After holding five public hearings, the ZBA granted Packard's application for a special exception by a vote of three to two, subject to sixteen conditions. The petitioners filed requests for a rehearing, which the ZBA denied.

The petitioners appealed to the trial court, arguing that: (1) the ZBA erroneously ruled that the proposed use is permitted by special exception in an industrial zone; (2) the ZBA erroneously ruled that the project constituted retail sales/services under the Greenland Zoning Ordinance; (3) Packard's application did not meet the criteria for the grant of a special exception; (4) the ZBA violated its own procedures by failing to have Packard's expert report relating to impact on surrounding properties independently reviewed; (5) the conditions placed on the grant of the special exception exceeded those permitted under the zoning ordinance; and (6) Jim Wilbur, a member of the ZBA, should have been disqualified from voting after being absent from two of the five hearings.

The trial court upheld the ZBA's decision to treat Packard's project as retail sales/services and found that such a use is permitted in an industrial zone by special exception. The trial court concluded, however, that Wilbur should have been disqualified from the ZBA vote because the Town of Greenland failed to establish that he examined all of the evidence that was developed at the missed hearings. The trial court also found that the abutters had been denied due process because the ZBA failed to have its engineering firm independently review Packard's expert reports after representing to the abutters that this procedure would be followed. The court concluded: "Because J. Wilbur should have been disqualified from voting on the application and the ZBA failed to follow its own procedure for reviewing reports, the Court reverses the ZBA's decision and remands this matter for a new hearing consistent with this narrative order." (Emphasis omitted.) The trial court did not address the other issues raised by the petitioners.

On appeal, the petitioners argue that the trial court erred in finding that Packard's project constitutes retail sales/services and that this use is permitted in an industrial district by special exception under the Greenland Zoning Ordinance. They also argue that the trial court erred in remanding the matter to the ZBA for a new hearing after the court found that Wilbur should have been disqualified. In its cross-appeal, Packard argues that the petitioners did not raise the issue of Wilbur's disqualification in a timely manner and, even if they did, the trial court erred in ruling that he should have been disqualified.

In response to a motion to dismiss filed by Packard, we also asked the parties to brief the issue of whether the trial court's order was a "decision on the merits," subject to mandatory appeal under Supreme Court Rule 7, or an interlocutory appeal under Supreme Court Rule 8. A "decision on the merits" includes an "order . . . following a hearing on the merits or trial on the merits," whereas an interlocutory appeal involves "[a]ppellate review

of rulings adverse to a party, before a final decision on the merits in a lower court." SUP. CT. R. 3. Packard argues that the trial court's order is not a decision on the merits because the trial court remanded the matter to the ZBA for further proceedings without addressing all of the issues before the court.

"Generally, when a trial court issues an order that does not conclude the proceedings before it, for example, by deciding some but not all issues in the proceedings ... we consider any appeal from such an order to be interlocutory ...." *Germain v. Germain*, 137 N.H. 82, 84 (1993); *see also Putnam Lumber Co. v. Eddie Nash & Sons*, 141 N.H. 670, 671 (1997) (holding that court order that decides some, but not all, of the issues before the court is not a final order for collateral estoppel purposes). In *Germain*, we recognized a limited exception to this general rule in a bifurcated divorce proceeding where issues related to the property division were completely severable from on-going custody and support determinations. *Germain*, 137 N.H. at 84; *see also Jenkins v. G2S Constructors, Inc.*, 140 N.H. 219, 223 (1995).

Here, both parties argue that the trial court erred in remanding this case to the ZBA for a new hearing based on the court's finding that Wilbur should have been disqualified. The trial court's order concluded the proceedings before it. Under these circumstances, we will review the court's order as a decision on the merits under Rule 7. Were we to hold otherwise, the parties would not have the right to obtain review of the trial court's order prior to the new hearing before the ZBA.

We agree with Packard that the trial court erred in ruling that the disqualification issue was timely raised and in remanding the matter to the ZBA based on that issue. We note, however, that the trial court also remanded the case based upon its finding that the petitioners were denied due process by the board's failure to have Packard's expert reports independently reviewed. Packard has not appealed that ruling.

■ Judicial review of zoning cases is limited. *Hill v. Town of Chester*, 146 N.H. 291, 292 (2001). The party seeking to set aside the decision of the ZBA has the burden to show that the decision is unlawful or unreasonable. *Bayson Properties v. City of Lebanon*, 150 N.H. 167, 169 (2003). In the trial court, the appealing party must demonstrate that an error of law was committed or must persuade the court by the balance of probabilities that the board's decision was unreasonable. *Id.* We will uphold the trial court's decision unless it is not supported by the evidence or is legally erroneous. *Duffy v. City of Dover*, 149 N.H. 178, 180 (2003).

*I. Disqualification of board member*

The petitioners argue that the trial court erred in remanding this matter to the ZBA for a new hearing because Wilbur's disqualification created a tie vote, which they argue should have the effect of denying the application for the special exception. Packard argues that the petitioners did not timely raise the disqualification issue before the ZBA and, even if they did, Wilbur should not have been disqualified. We agree with Packard that the petitioners did not raise this issue at the earliest possible time and thus could not raise it on appeal to the trial court.

We require disqualification issues to be raised at the earliest possible time because "trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance." *Sanderson v. Town of Candia*, 146 N.H. 598, 602 (2001) (quotation omitted). "Interested parties are entitled to object to any error they perceive in governmental proceedings, but they are not entitled to take later advantage of error they could have discovered or chose to ignore at the very moment when it could have been corrected." *Appeal of Cheney*, 130 N.H. 589, 594 (1988). In this case, the petitioners had the burden to object to Wilbur's participation in the vote as soon as they became aware of the grounds for the objection so that the ZBA would have the opportunity to correct any problem. *See Bayson Properties*, 150 N.H. at 171.

The Greenland ZBA is made up of five members, plus alternates. Wilbur was present at the first hearing on Packard's application, held on December 18, 2001. He missed the next two hearings in January and March 2002, then attended the final hearing on April 17, 2002, and the deliberative session on April 25, 2002, at which the board members cast their votes granting the special exception. At least some, if not all, of the petitioners attended the January 15 meeting at which Chairman Fay announced:

> [W]e do have a fifth member of the board, who is acting, and that's Jim Wilbur, former selectman in town. . . . Jim is in Pennsylvania, but he will be brought up to speed. He has all the information that I have been given. We will get all the information to him. The recordings, of course, are available. . . . [W]e will keep everybody informed. So I fully expect that Mr. Jim Wilbur will also be a voting member of the board.

The petitioners' attorney, Charles Griffin, was also present at the board's deliberative session on April 25, 2002. Packard's application was the only item on the board's agenda at that meeting. Wilbur actively

participated in the board's discussion and the final vote on the special exception. The petitioners did not object to Wilbur's participation in the deliberations or the final vote at that meeting. They first raised the issue of Wilbur's disqualification in their motion for rehearing, which they submitted to the ZBA on May 22, 2002.

■ The trial court found that the petitioners "raised their concern about [Wilbur's] absence at the earliest possible time" because they "did not know J. Wilbur would be voting on the application until the ZBA actually voted at the conclusion of the final hearing." The court's finding is contradicted by Chairman Fay's statements at the ZBA meeting on January 15, 2002, when he indicated that Wilbur would be "brought up to speed" on the hearing and he "fully expect[ed] that Mr. Jim Wilbur [would] also be a voting member of the board." Furthermore, the petitioner's attorney was present at the April 25, 2002 meeting in which Wilbur fully participated and voted on the special exception. Had the petitioners raised their objections to Wilbur's participation at either of these meetings, the board could have corrected the problem by disqualifying Wilbur from voting or taking steps to ensure that he had familiarized himself with the record. *See Sanderson*, 146 N.H. at 602. Thus, the trial court erred by considering whether Wilbur should have been disqualified from voting on Packard's application because the petitioners did not raise their objection at the earliest possible time. *See id.*

*II. Retail sales/service use*

The petitioners argue that the trial court erred in holding that Packard's project constitutes retail sales/services and that such a use is permitted in the Greenland industrial district by special exception. We disagree.

The interpretation of a zoning ordinance is a question of law, which we review *de novo. Old Street Barn v. Town of Peterborough*, 147 N.H. 254, 257 (2001). Because the traditional rules of statutory construction govern our review, we construe the words and phrases of an ordinance according to the common and approved usage of the language. *Duffy*, 149 N.H. at 181. When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Id.*

The Greenland Zoning Ordinance (ordinance) provides that "[t]he [ZBA] shall hear and decide requests for special exceptions as provided for in this Ordinance. The [ZBA] shall grant requests for special exceptions which are in harmony with the general purpose and intent of this Ordinance." GREENLAND ZONING ORDINANCE art. XVII, § 17.1.3 (2004). A special

exception must meet five criteria delineated in the ordinance and may be granted subject to certain conditions, such as setback requirements and restrictions on the operation of businesses. *Id.* §§ 17.1.3.1, 17.1.3.2.

Under the section entitled "Use Regulations," the ordinance provides: "The Table of Uses, Section 3.6, specifies the uses that are permitted by right, are permitted by special exception, or are prohibited." GREENLAND ZONING ORDINANCE art. III, § 3.5.1 (2004). According to the Table of Uses, a retail sales/service use is prohibited in the residential district, permitted in the commercial district, and permitted by special exception in the industrial district. *Id.* § 3.6.G.1. Because Packard's property is in an industrial district, retail sales/services may be permitted by special exception.

The petitioners argue that under the ordinance, retail sales/services are only permitted in an industrial district as an accessory use, not a primary use. They rely on a separate provision of the ordinance, which states:

> Research and development, corporate and business offices may be allowed to contain the following other uses, which shall be accessory to the primary or principal use:
>
> a. Employee restaurant/dining facilities;
> b. Retail facilities for the use of employees only;
> c. Business services directly related to the primary use.

*Id.* § 3.7.9. The petitioners contend that when this provision is read together with the Table of Uses, the intent of the ordinance is to allow retail sales/services in an industrial district only as accessory to a permitted primary use.

◼ We conclude that the petitioners' argument "misapplies the doctrine of accessory uses and miscasts the ordinance." *Hannigan v. City of Concord*, 144 N.H. 68, 71 (1999). An accessory use is not the principal use of the property, but rather a use occasioned by the principal use and subordinate to it. *KSC Realty Trust v. Town of Freedom*, 146 N.H. 271, 273 (2001). "The rule of accessory use is a response to the impossibility of providing expressly by zoning ordinance for every possible lawful use." *Hannigan*, 144 N.H. at 71 (quotation omitted). An owner of property seeking to engage in an accessory use need not apply for a special exception, so long as the accessory use is incidental to a permitted principal use. In contrast, the Table of Uses lists activities that are permitted, prohibited, or permitted by special exception as *primary* or *principal* uses of the property. *See* GREENLAND ZONING ORDINANCE art. III, § 3.5.1. The two sections of the ordinance, when read together, permit

retail sales/services in an industrial district as either a principal use (by special exception) or as an accessory use (under certain circumstances). *See id.* §§ 3.6.G.1, 3.7.9. Thus, the ZBA acted reasonably in concluding that a retail sales/service use is permissible as a principal use in an industrial district by special exception.

■ The petitioners also argue that Packard's project does not constitute "retail" sales as that term is used in the zoning ordinance. We disagree. Because this term is not defined in the ordinance, we construe it according to its common and approved usage. *See Duffy,* 149 N.H. at 181. A common meaning of "retail" is "the sale of commodities or goods in small quantities to ultimate consumers." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1938 (unabridged ed. 2002). "Retail" is often contrasted with "wholesale," which is "the sale of goods or commodities in quantity usu[ally] for resale." *Id.* at 2611. The trial court found that "[e]ach of the anticipated occupants of [the proposed] shopping center is in the business of selling goods in small quantities to consumers" and thus the proposed shopping center falls within the common meaning of "retail."

The petitioners argue that we should look beyond the plain meaning of the ordinance to the intent of the town's residents when the ordinance was enacted. *See Town of Greenland v. Bunker,* 118 N.H. 783, 786 (1978) ("In construing language not defined in the body of the ordinance we also look to the ordinance as a whole and attempt to discern the meaning intended by the framers." (Quotation omitted)). They rely on our reasoning in *Carnie v. Town of Richmond,* 139 N.H. 21 (1994), in which we considered the town residents' intent in construing an exemption for antennas to the zoning ordinance's thirty-five-foot height restriction on buildings. *Carnie,* 139 N.H. at 23. We concluded that when the town residents exempted antennas from the height restriction, they more likely contemplated an "ordinary, pre-cable television receiving antenna" with a short supporting mast than the intervenor's proposed 90- to 100-foot high "tower to support antennas." *Id.* at 21, 23.

■ In this case, the petitioners contend that the size of Packard's proposed shopping center greatly exceeds the size of existing commercial properties in Greenland and thus could not have been intended by the framers of the ordinance. The ordinance, however, does not distinguish between retail sales/service facilities based on the size of the store. *See* GREENLAND ZONING ORDINANCE art. III, § 3.6.G.1. Likewise, the common definition of "retail" focuses on the nature of the transaction between the seller and the purchaser, not the size of the business or commercial enterprise. *See* WEBSTER'S THIRD NEW INTERNATIONAL

DICTIONARY, *supra* at 1938. We conclude that this definition encompasses the type of retail stores that Packard has proposed. Furthermore, the size of the proposed shopping center is taken into account in other ways in the special exception application, such as the impact on surrounding neighborhoods, increased demand on municipal services and increases in the level of traffic congestion in the vicinity. Therefore, we agree with the trial court that "the ZBA acted reasonably in treating [Packard's] proposed use as a 'retail sales/service' use."

We remand this matter to the trial court for further proceedings in accordance with this opinion. Because the only issue on remand is the appropriate remedy based upon the ZBA's failure to have the expert reports reviewed, the trial court should determine whether the case should be remanded to the ZBA.

*Affirmed in part; reversed in part; vacated in part and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.