Belknap
No. 2007-202

GLENN L. TONNESEN

v.

TOWN OF GILMANTON

Argued: January 17, 2008
Opinion Issued: March 13, 2008

*Donahue Tucker & Ciandella, PLLC*, of Exeter (*Robert M. Derosier* and *Robert D. Ciandella* on the brief, and *Mr. Ciandella* orally), for the petitioner.

*Upton & Hatfield, LLP*, of Concord (*Barton L. Mayer* and *Matthew R. Serge* on the brief, and *Mr. Serge* orally), for the respondent.

DALIANIS, J. The petitioner, Glenn L. Tonnesen, appeals the order of the Superior Court (*Smukler*, J.) denying his petition for a declaratory judgment that, pursuant to RSA 674:16, V (Supp. 2007), aircraft takeoffs and landings are a valid and permitted use of his property. We affirm.

The record reflects the following facts. The petitioner owns approximately 230 acres of land in the rural zoning district of the Town of

Gilmanton on which he intends to retire. His retirement plans include his private recreational use of a helicopter from this property. The use of land for aircraft takeoffs and landings is not permitted in three of the town's six zoning districts, and is permitted only by special exception in the rural district and two other districts.

On July 17, 2006, the petitioner requested that the town's zoning board of adjustment (ZBA) grant him a special exception to use part of his property as a landing area for his helicopter. The ZBA denied this request and his subsequent motion for rehearing. The petitioner appealed and sought a declaratory judgment. Following a hearing on the merits, the superior court denied his petition for declaratory relief and affirmed the ZBA's denial of a special exception. On appeal to this court, the petitioner challenges only the trial court's ruling on his declaratory judgment petition.

The petitioner's sole argument on appeal is that the town's ordinance violates RSA 674:16, V. The interpretation of a statute is a question of law, which we review *de novo*. *N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 713 (2007). In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.* We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *In the Matter of Sarvela & Sarvela*, 154 N.H. 426, 436 (2006).

We apply these same rules of construction to zoning ordinances. *Fox v. Town of Greenland*, 151 N.H. 600, 605 (2004). Thus, we construe the words and phrases of an ordinance according to the common meaning and approved usage of the language, *id.*, "unless it appears from their context that a different meaning was intended," *Feins v. Town of Wilmot*, 154 N.H. 715, 719 (2007) (quotation omitted). Moreover, we determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words and phrases. *Id.*

RSA 674:16, V provides:

> In its exercise of the powers granted under this subdivision, the local legislative body of a city, town, or county in which there are located unincorporated towns or unorganized places may regulate and control accessory uses on private land. Unless specifically proscribed by local land use regulation, aircraft take offs and landings on private land by the owner of such land or by

a person who resides on such land shall be considered a valid and permitted accessory use.

"[T]he statute clearly states that aircraft takeoffs and landings on private land are valid and permitted accessory uses unless specifically proscribed by local ordinance." *Spengler v. Porter*, 144 N.H. 163, 165 (1999).

Aircraft use on private land has, from time to time, been a contentious issue, which RSA 674:16, V was intended to resolve. *See, e.g., Treisman v. Kamen*, 126 N.H. 372 (1985). *Treisman* concerned the proposed use of a heliport in Bedford. *Treisman*, 126 N.H. at 373. The Bedford ordinance was silent as to the use of land for helicopter takeoffs and landings. *Id.* at 375-76. Bedford officials ruled that the ordinance did not forbid the use of the defendant's land for a heliport and issued the necessary permits. *Id.* at 374. The plaintiff, an abutting landowner, requested an injunction from the superior court, which denied the request, ruling that because the Bedford ordinance did not mention helicopters, using land for this purpose was permissible. *Id.*

In overruling the trial court, we determined that the Bedford ordinance was a permissive zoning ordinance, which "prohibits uses for which it does not provide permission." *Id.* at 375. Thus, as a general proposition, the ordinance prohibited heliports because it did not expressly list them as a permitted use. *Id.* at 376. As we explained, a permissive zoning ordinance is "intended to prevent uses except those expressly permitted or incidental to uses so permitted." *Id.* (quotation, brackets and ellipses omitted). For the defendant's heliport to be a permissible use, we held, he had to have obtained a special exception or a variance or the heliport had to be an accessory use. *Id.* Because the defendant had neither a special exception nor a variance, we ruled that the case turned on whether the heliport qualified as an accessory use. *Id.* We explained that, on remand, the defendant had the burden of submitting sufficient evidence to make a *prima facie* showing that his use qualified as an accessory use. *Id.* at 377; *see Town of Windham v. Alfond*, 129 N.H. 24, 28-29 (1986) (an accessory use is "occasioned by and subordinate to the permitted primary use and customarily or habitually associated with it" (citations omitted)). In cases decided after *Treisman*, we have reiterated that permissive zoning ordinances "prohibit uses of land unless they are expressly permitted as primary uses or can be found to be accessory to a permitted use." *Town of Windham*, 129 N.H. at 27; *see Hannigan v. City of Concord*, 144 N.H. 68, 70 (1999).

■ Under RSA 674:16, V, however, even if a zoning ordinance is permissive, it will not be deemed to prohibit the use of land for aircraft landings and takeoffs merely because it fails to list this use as a permitted

use. *See Spengler*, 144 N.H. at 166. Rather, if a municipality wishes to prohibit use of land for this purpose, RSA 674:16, V provides that it must "specifically proscribe[]" the use of land for this purpose. In *Spengler*, 144 N.H. at 165, we held that this means that in prohibiting this activity, the ordinance "must refer to aircraft takeoffs and landings 'with exactness and precision.'"

■ Further, RSA 674:16, V establishes that aircraft takeoffs and landings on private land by the land's owner or another residing on the land are accessory uses as a matter of law. Thus, pursuant to RSA 674:16, V, landowners seeking to use their property for aircraft landings and takeoffs need not plead and prove that using property in this way is an accessory use (*i.e.*, is occasioned by and subordinate to the primary use of the property). *See* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE, PLANNING AND ZONING § 9.03, at 140 (3d ed. 2000).

The petitioner contends that the town's zoning ordinance violates RSA 674:16, V because it allows landowners in the rural zoning district to use their land for aircraft takeoffs and landings only by special exception. The petitioner asserts that RSA 674:16, V requires the town either to prohibit use of land for this purpose outright or to permit it as a matter of right. As the petitioner explains: "As an accessory use, [the petitioner] has a right [under the statute] to engage in this activity without first seeking permission from the ZBA."

■ The petitioner has set up a false dichotomy. By its plain language, RSA 674:16, V expressly allows a town to "regulate and control" accessory uses on private land. By definition, therefore, a town need *not* completely prohibit use of land for aircraft landings and takeoffs *or* permit this use as of right, but *may* "regulate and control" use of land for this purpose. In other words, under the statute's plain terms, if a town has not expressly prohibited use of land for aircraft takeoffs and landings, it need not accept every proposed use of land for this purpose, but may accept *only* those proposals that comply with its regulations. This is made clear by the last sentence of RSA 674:16, V, which provides that aircraft takeoffs and landings shall be considered a "valid and permitted accessory use." Imposing conditions upon an accessory use does not convert it into an invalid or prohibited accessory use. To so construe the statute would negate the grant of authority to regulate accessory uses on private land provided by the first sentence of RSA 674:16, V. Because we construe statutes as a whole, *see South Down Recreation Assoc. v. Moran*, 141 N.H. 484, 487 (1996), we conclude that, like other valid and permitted accessory uses, aircraft takeoffs and landings can be regulated by requiring landowners to obtain a special exception.

Contrary to the petitioner's assertions, RSA 674:16, V is silent regarding the means by which a town may regulate use of land for this purpose. To the extent that the petitioner contends that, as a general principle, a town may not regulate or control an accessory use by way of a special exception, we disagree. While the petitioner asserts that we decided this issue in *Fox*, 151 N.H. at 606, he is mistaken. In that case, when we stated that "[a]n owner of property seeking to engage in an accessory use need not apply for a special exception, so long as the accessory use is incidental to a permitted principal use," we were describing the zoning scheme at issue. *Fox*, 151 N.H. at 606. We were not broadly announcing a new rule that a town may not regulate accessory uses by requiring property owners to obtain special exceptions. *See* 7 P. ROHAN & E. KELLY, ZONING AND LAND USE CONTROLS ch. 40A, at 40A-1 to 40A-2 (2007) ("[s]ome accessory uses are allowed only as uses by [special exception]"); 8 P. ROHAN & E. KELLY, ZONING AND LAND USE CONTROLS ch. 44, at 44-1 (2007); *see also Gratton v. Pellegrino*, 115 N.H. 619, 620 (1975) (under zoning ordinance at issue, accessory uses may be permitted by special exception).

Finally, we believe our construction of RSA 674:16, V comports with the fundamental right to use and enjoy one's property protected by both the State and Federal Constitutions. *See Spengler*, 144 N.H. at 166. The concept of special exceptions was developed in early zoning ordinances "as a technique for providing for types of land use which are necessary and desirable, but which are potentially incompatible with uses usually allowed in a particular district. These uses are not permissible as a matter of right because in some situations they might pose serious problems." 15 LOUGHLIN, *supra* § 23.01, at 285-86. For example, "[u]ses which might generate too much traffic for certain neighborhoods, or too much noise, but which in other areas would be acceptable," are commonly regulated by requiring a special exception. *Id.* § 23.02, at 288-89.

To construe RSA 674:16, V as the petitioner requests would limit the town to two choices—prohibit aircraft takeoffs and landings throughout a zoning district or permit it throughout the district. Either choice could unnecessarily limit the right of property owners to use and enjoy their property. A flat prohibition could unnecessarily restrict the use and enjoyment of land by landowners living in areas where aircraft takeoffs and landings are acceptable; full permission could unnecessarily restrict the use and enjoyment of land by neighboring landowners in areas where aircraft takeoffs and landings are unacceptable. By contrast, our construction of the statute better protects the rights of all landowners, as it avoids the dilemma presented by the petitioner's interpretation. Through the use of special exceptions, a town can protect the rights of

landowners both in areas where aircraft takeoffs and landings are acceptable and in areas where they are not.

For all of the above reasons, therefore, we hold that the town's zoning ordinance does not violate RSA 674:16, V by requiring landowners to obtain a special exception before using their land for aircraft takeoffs and landings. We confine our analysis to the issues raised by the petitioner on appeal, however, and express no opinion as to whether the ordinance is lawful in other respects.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.