**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2021-0527, <u>H.F. v. M.Z.</u>, the court on March 15, 2022, issued the following order:**

The defendant's motions requesting that we "revoke" the stalking final order of protection, and that we grant him leave to file a response to the plaintiff's objection, are denied. Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, M.Z., appeals a civil stalking final order of protection, <u>see</u> RSA 633:3-a (Supp. 2021), entered against him by the circuit court for the protection of the plaintiff, H.F. We construe the defendant's brief to argue: (1) that the evidence was insufficient to support a finding that he stalked the plaintiff, and (2) that the trial court's decision should be overturned because the plaintiff's attorney had a conflict of interest. We affirm.

We first consider whether the evidence was sufficient to support the trial court's order. We review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or erroneous as a matter of law. <u>Fisher v. Minichiello</u>, 155 N.H. 188, 190 (2007). "We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." <u>Id</u>. We view the evidence in the light most favorable to the prevailing party, in this case, the plaintiff. <u>Id</u>.

A person commits the offense of stalking if that person "[p]urposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety . . . and the person is actually placed in such fear." RSA 633:3-a, I(a). "Course of conduct" is defined as two or more acts over a period of time, however short, which evidences a continuity of purpose. RSA 633:3-a, II(a). A course of conduct may include, among other things, "[t]hreatening the safety of the targeted person," "[f]ollowing, approaching, or confronting that person," "[a]ppearing in close proximity to, or entering the person's residence, place of employment, school, or other place where the person can be found," or "[p]lacing an object on the person's property, either directly or through a third person." RSA 633:3-a, II(a)(1)–(3), (5). However, a course of conduct does not include constitutionally protected activity, nor conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person. RSA 633:3-a, II(a). The plaintiff bears the burden to prove

"stalking" by a preponderance of the evidence. RSA 633:3-a, III-a; <u>Fisher</u>, 155 N.H. at 190.

In this case, the record demonstrates that, over the course of a few days, the defendant visited the plaintiff's workplace twice for legitimate purposes. A few days later, the defendant visited the plaintiff's workplace again, showed her a bottle of water, stated "things aren't always what they appear to be," and shook the bottle — which began to fizz. The defendant explained that the liquid was merely seltzer, and then told the plaintiff about a young woman whom he watches from his home as she enters a nearby employer, explaining that he has given her gifts.[1] The plaintiff became concerned by the defendant's unusual behavior, as it appeared that his presence in the office was unrelated to his prior legitimate purposes.

The following day, the defendant sent an unsolicited email to the plaintiff thanking her for her assistance, and referencing the seltzer bottle demonstration and his statement that things aren't always what they appear to be. He stated that, although it "may seem like an 'empty promise' kind of statement," he "clearly see[s] the integrity and truth" in the plaintiff. The defendant then requested a date with the plaintiff, asking if the plaintiff would take Friday off from work to accompany him to an antique show and flea market.

The next day, the defendant forwarded his email to the plaintiff's supervisor, copying the plaintiff, stating that "I think everybody assumes 'romance' in EMails like these but I'm thinking that [the plaintiff] was very professional & trustworthy," and comparing the plaintiff to his mother. The defendant renewed his invitation to the plaintiff to accompany him to an antique show and flea market, noting that the trip would include dinner, and providing instructions about what to wear and bring.

The following day, the defendant arrived uninvited at the plaintiff's home. He approached the front and back of the home, and walked about the property taking photographs. The plaintiff was home at the time, and she contacted her husband, her employer, and the police. In her petition, she stated that she was "hysterical," and that the police dispatcher "had to keep trying to calm me down so he could get [the] information."[2] Her husband arrived home and confronted the defendant, and, thereafter, the police arrived and interviewed the parties. The defendant explained that he was at the home in order to drop

---

[1] During his testimony, the defendant described the young woman's daily routine and personal details about her, and stated that he knew where she lives and had been to her home.

[2] At the hearing, the defendant acknowledged that he had observed the plaintiff's face to be red, and that she had apparently been crying during the incident.

2

off a note and a small pumpkin as a gift for the plaintiff. He acknowledged that he had not been invited there, and that he, or his friend, had obtained the plaintiff's address on the internet. The officer issued a criminal trespass notice to the defendant, and repeatedly requested that the defendant leave the property before he complied.

Thereafter, the plaintiff filed a stalking petition in the circuit court. Following a hearing, the trial court issued a final order of protection, concluding that, under RSA 633:3-a, I(a), the defendant had stalked the plaintiff. Among other things, the court found that the defendant "sent an unsolicited e-mail to [the plaintiff] and then arrived unannounced and uninvited at her residence clearly having obtained her home address himself or with the assistance of someone else."

Although the defendant contends that his intentions were "above board, honorable and kindly," the trial court reasonably could have found, based upon the evidence, that the defendant's actions caused the plaintiff to reasonably fear for her personal safety. See Fisher, 155 N.H. at 190 (observing that we must view the evidence in the light most favorable to the prevailing party, and that we give deference to the trial court's judgments on the credibility of witnesses and the weight to be given testimony). Based upon our review of the record, we conclude that the evidence is sufficient to support the trial court's finding, by a preponderance of the evidence, that the defendant stalked the plaintiff. See RSA 633:3-a, III-a; Fisher, 155 N.H. at 190.

Next, the defendant argues that the trial court's order should be overturned because the plaintiff's attorney had a conflict of interest — namely, that the attorney represented the defendant in connection with the preparation of his will and other estate planning documents several months before the incidents giving rise to the stalking petition.

However, because the defendant never raised this issue below, and neither objected nor moved to disqualify the attorney from representing the plaintiff, this issue is not preserved for appellate review. "The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review." State v. Blackmer, 149 N.H. 47, 48 (2003) (quotation omitted). "This rule, which is based on common sense and judicial economy, recognizes that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." Id. (quotation omitted); see also Fox v. Town of Greenland, 151 N.H. 600, 604 (2004) (observing that "[w]e require disqualification issues to be raised at the earliest possible time because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance" (quotation omitted)). Indeed, we note that, on appeal, the defendant has still not moved to disqualify the attorney from representing the plaintiff.

The defendant's remaining arguments do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

4